SAMUEL C. CAMPBELL, plaintiff in error, *vs.* CYNTHIA MILLER, *et al.*, defendant in error.

1. A trustee in possession of trust property is only bound, under our Code, for ordinary diligence in its preservation and protection.
2. And a trustee in possession of promissory notes as trust, property may receive payment of said notes in such currency as a prudent man, under the like circumstances, would receive in payment of debts due him individually.
3. A trustee who, during the war, in good faith, received Confederate treasury notes, in payment of promissory notes held by him in trust, acted under color of law, and is protected by the Act of 1866 and the Ordinances of the Conventions of 1865 and 1868.
4. If the trustee received Confederate currency before the adoption of the Code, and after its adoption invested it in securities not authorized by law, and without an order of Court, did so at his own risk, and is liable for the value of such currency at the time when it is said to have been re-invested.
5. If the trustee changes the investment, with the consent of the *cestui que trust,* who is of legal age, he is not liable for any loss growing out of such new investment.
6. It was competent to show that the investment, or changes of investment, were prudent.
7. When the Court is requested to charge the jury in writing, he should read his charge, and make no verbal additions or explanations.
8. A written request to charge the jury must be applicable to the facts and the law, or the Court need not notice it. The Court may, if he please, charge the jury by verbally modifying it, provided his charge, as given, is the law.

Equity. Trustees. Tried before Judge GREEN. Henry Superior Court. October Term, 1868.

In September, 1860, Jacob Miller and Cynthia Waugh were about to intermarry, and entered into a written contract, whereby it was agreed that $2,000 00 out of her property, to be in promissory notes, should remain her sole and separate property, not in law or equity subject to the payment of any debt of Miller, or in any way subject to his control; and that at her death the same should be equally divided between her children therein named. The deed conveyed said $2,000 00 to said Samuel C. Campbell, with power and direction to him to "possess himself of, and control, said

amount, in conformity to said provisions, limitations and conditions," and Campbell so accepted the trust. Certain notes were delivered to him as trustee. Because of the alleged mismanagement and conversion of the trust fund, Mrs. Miller, by her next friend and her children, filed a bill against Campbell, she praying that he pay her the interest due to her, and they praying that he be held liable for said *corpus* that he be removed, and a new trustee be appointed, etc.

Answer was waived and need not be reported, further than to say generally, that he stated his management of the estate; that part of it went into Confederate currency and part into tobacco, by consent of Mrs. Miller, (all of which will appear in the testimony), and contended that, under the circumstances, he was not liable to pay anything.

Upon the trial, the complainants' solicitors read in evidence said deed, and the testimony of Mrs. Miller and one of her daughters. The daughter testified that she heard a conversation between Mrs. Miller and Campbell, in which he said to her that he thought the money had better be invested in tobacco, to which she replied: "do the best you can with it;" that he told her that tobacco would be worth four dollars per pound, in gold, at the end of the war, and asked Mrs. Miller if she would take the lawful interest for her money, and she told him to do what was right; that Campbell had a box or two of tobacco on hand at the end of the war; that she saw Mrs. Miller pay Campbell her taxes, and asked for her tax receipt; he said it was misplaced, but. he would hand it to her; at another time he said he had forgotten to give in her tax, and several times since, he said he never intended to give it in during the war.

Mrs. Miller testified, that Campbell, as her trustee, received two promissory notes, amounting to two thousand dollars, one on D. M. Wilson, with Benj. Barfield and Daniel Ruff for security, which notes were given for land in 1860; Campbell told her he had collected one of them, (it was done without her consent;) that he asked her what to do with it, and she said it was best to invest it in tobacco; she then told him to

do the best he could with it; he said tobacco would be worth five dollars per pound at the end of the war; he asked if she would take lawful interest on the money, to which she replied, "do what is right with it;" that there was due her about $725 00 interest, she having received $210, in 1861–2, from D. M. Wilson in 1861, and from W. H. Farmer, the interest due in 1861 and 1862.

Upon cross-examination, she stated that he had no Confederate money belonging to her, so far as she knew, nor did she ask him to invest any for her, nor had she ever received any tobacco from him; that after the war, she asked Campbell about her business, and he then said, there was a box or two of her tobacco; she rejoined that he had sold the tobacco, and he said he could produce the same brand; she neither agreed nor refused to receive said tobacco. She admitted that Dupree's notes should be substituted for some of those held by Campbell for her.

The complainants having closed, Campbell then testified, in his own behalf, in substance as follows: About the last of 1860, as such trustee, he received one note on W. H. Farmer, and another on D. M. Wilson, each for $1000 00. Farmer's note was secured by mortgage on land, and the one on Wilson had for security Benjamin Barfield, who is still solvent. He kept the notes about two years, the makers meanwhile paying Mrs. Miller the accruing interest. Then Chas. L. Dupree purchased said land from Farmer and the vendee of Wilson, and agreed to take up said two notes. Dupree paid Campbell the Wilson note in Confederate currency, about the end of 1862, which currency had not then depreciated much, if any. In order to preserve the fund, he invested it in tobacco, at $1 55 per pound, and took Dupree's note for the Farmer note, Dupree being then solvent. Afterwards this Dupree note was renewed. In 1864, Campbell borrowed from Dupree $1000 00, and gave him his note for the same. In January, 1865, Campbell gave up to Dupree the note he had made in 1862, in exchange for his own note, given in 1864, Dupree paying the difference, (what amount is not shewn.) The tobacco was stored. In the fall of 1864,

Campbell *vs.* Miller *et al.*

two boxes of said tobacco were lost or stolen, and L. T. Doyal, the storer, paid him $1000 00 in Confederate currency therefor. Then, it took fifty dollars in that currency to buy one of gold. This $1000 00, in Confederate currency, Campbell has on hand, and it is worthless. He never appropriated a dollar of the trust fund to his own use, and managed the same as well as he did his own property. About July, 1864, Campbell bought a wagon and five mules for $3000 00, and it was for $1000 00 of this money, which he borrowed of Dupree, he gave his said note. The wagon and team was worth $500 00 or $600 00. Campbell offered to pay Dupree his note, and Dupree insisted on paying his note at the same time, and the exchange of notes was made to save the trouble of counting the money. Farmer is insolvent.

CHARLES L. DUPREE stated his transactions with Campbell substantially as Campbell had stated them. He stated that his note was given to Campbell on the 28th of December, 1862, and then he paid him said Confederate currency; that he then owned ninety slaves, besides lands, etc., and Wilson and Farmer were good, each owning lands, slaves, etc.

L. T. DOYAL confirmed what was said as to the purchase, storage, loss and payment for the tobacco, and said that six boxes were bought.

CAMPBELL, reintroduced, stated that he still had three boxes of the tobacco; that he had paid one box of tobacco to Mrs. Miller, and paid some taxes for her. He did not state the value of the tobacco paid her.

The defendant's solicitors also read in evidence Barber & Son's table of Confederate money, showing its value, as compared with gold, during the war. They offered a witness, and proposed, by him, to prove that the investment of said trust fund by Campbell, under the circumstances then existing, was a prudent investment. The Judge said he would leave that to the jury. They then offered to prove that said Farmer and Wilson, two of the complainants, said that when they sold their land to Dupree, each of them contracted with Dupree to take up their said notes held by Campbell, as trustee. The Court ruled out that testimony. The evidence

being closed, the defendant's solicitors requested the Court to give his charge to the jury in writing, according to the statute. They requested him, in writing, to charge the jury—

1st. That if they believed, from the evidence, that, under the circumstances at the time of the payment of the two notes, a man of ordinary prudence would have received the money for himself, such reception of the money by Campbell, was not such an act as, in law or equity, would have charged the defendant.

2d. That the terms of the marriage settlement in evidence do not make it the duty of Campbell, the trustee, to hold the notes turned over to him, but that it was his duty to preserve and protect the money collected on them, for the benefit of the trust-estate, as a prudent man would use his own funds.

3d. That it was lawful for trustees to receive Confederate treasury notes and interest-bearing Confederate notes in payment of claims due, * * * * * * * and if defendant did receive Confederate treasury notes on the two notes of Wilson and Farmer, it was no violation of the trust confided to him.

4th. That if the defendant, after he had collected the Wilson note at the request of complainant, Mrs. Miller, invested the funds in tobacco, for the purpose of preserving the trust-funds, and she has received a part of that tobacco since the war, he cannot be made liable for more than the tobacco is now worth, after charging her with the tobacco she has already received, and if defendant has received pay for two boxes of tobacco lost, in Confederate treasury notes, and the money perished on his hands, he is not liable for such loss.

5th. And lastly, they asked him to give in charge the Act of the General Assembly, approved 6th March, 1860, ratifying and confirming certain acts of trustees, etc.

He charged the jury that the trustee was bound to keep and preserve the *corpus* of the trust property, in pursuance of the provisions of the deed of trust; that he was only bound to ordinary diligence, i. e., to use the same care that he would in the preservation of his own property; that the

Campbell *vs.* Miller *et al.*

trustee was bound to accept, in payment of both, or either of said notes, provided the makers tendered payment in gold or its equivalent; that if the trustee received Confederate money, and it was not, at the time of payment, equivalent to gold, he did so at his own risk, and is responsible for the value of the notes when he first received them into his possession as trustee; that the trustee had no authority or legal right to invest the notes or their proceeds in tobacco or other property, unless under or by virtue of an order from the Chancellor, and the tobacco cannot be held and treated as a part of the *corpus* of the trust-estate, unless it was accepted and assented to by the *cestui que trust* and all of the remainder-men; that Confederate money was not a legal tender, and the trustee was not bound to take it in payment of said notes; and if he did receive it in payment of said notes, or either of them, he did so at his own risk, and if it died upon his hands or became worthless, it is his loss, and he is liable for the amount of the *corpus* of the trust-estate and the legal interest which had not been paid by him to the life-tenant, in pursuance of the deed of trust; that the *cestui que trust* had no right to control the *corpus* of the estate, or direct the acts of the trustee, but that the legal title was in him, and he had the same right to manage it, as he had to manage his own property, and independent of the wishes of the *cestui que trust*, under said deed of trust, and cannot relieve himself from liability by alleging that he acted under the advice of the life-tenant; that the box of tobacco received by Mrs. Miller, should be allowed in payment of the interest, and her acceptance of it is not an assent to the investment, and does not bind her and the remainder-men.

This charge was written out, and read as written. In reading it, the Judge repeated and used, at times, words different from some in the written charge, by way of explanation, but did not change or vary the written charge. In lieu of the first request he charged, without writing out the same, that the defendant, as trustee, had no right to receive Confederate money, or any thing but gold, silver, or its equivalent, either for principal or interest. He said he would modify the second

request, and charged, without writing out the same, that the trustee could not change the character of the trust fund, except by an order from the Chancellor upon a proper case made. He refused to give the third, fourth and fifth requests.

The jury found that Campbell should be removed as trustee, and said W. H. Farmer should be trustee in his stead; that Campbell should pay to Farmer, as such trustee, $2000 00, and that he should pay $716 67 for unpaid interest, and that execution issue therefor and for costs, and the decree was rendered accordingly.

Defendant's solicitors moved for a new trial, upon the grounds that the Court erred in refusing to let them prove that the said investment was prudent; in repeating said sayings of Wilson and Farmer; in said refusals to charge as requested; in said modifications of said requests, because they were wrong, and because they were unwritten; in each proposition of said charge, and in the whole of it, as given; in charging other things than those put in writing, and because the decree was contrary to law and evidence, and the weight of evidence.

The Court overruled the motion, refused a new trial, and error is assigned on each of said grounds.

DOYAL & NUNNALLY, J. J. FLOYD, for plaintiff in error.

PEEPLES & STEWART for defendants in error.

BROWN, C. J.

After a careful review of this case, I am satisfied that the "written synopsis of the points decided," which was reduced to writing and delivered during the term, with the concurrence of the whole Court, covers every point that is material. I might sustain these points in a lengthy opinion, supported by numerous authorities; but I do not deem it necessary. Taken in connection with the report of the case, the following synopsis is all that is necessary to a correct understanding of the decision. I therefore annex it, as the written opinion of

Campbell *vs.* Miller *et al.*

the Court in this case, instead of using it as a *syllabus*, to be elaborated in the written opinion, as in other cases.

1. The marriage settlement in this case was a contract between the parties intending marriage and the trustee; which vested a life-estate in the $2,000 00 of notes in Mrs. Miller, with remainder in her children, who are named, after her death. A trustee in possession of the trust property is only bound to ordinary diligence in its preservation and protection.

2. If the trust property consists of promissory notes, the trustee may receive payment of the notes when due, in such currency as a prudent man would receive for debts due him under similar circumstances.

3. A trustee who, in good faith, received Confederate treasury notes in payment of a note held in trust, under the Act of 18th April, 1863, acted under color of law, and is protected by the Act of 1866, and the Ordinances of the Conventions of 1865 and 1868, and if he invested said treasury notes without proper authority, or lost them by negligence, he will only be liable for their value when received, allowing him a reasonable time to re-invest. A trustee who held a promissory note in trust prior to the adoption of the Code, (1st January, 1863,) if he acted in good faith, had a right to receive payment in the currency generally received by prudent men in the transaction of their own business, and to re-invest such currency in the note of a person who was then entirely solvent; and if, by the results of the war, the maker proved insolvent, the trustee is not liable for the loss.

4. A trustee, who received payment of a note held in trust in the then currency, before the adoption of the Code, and after its adoption, invested it, otherwise than in the stocks, bonds, or other securities issued by this State, or other securities authorized by law, and without an order of Court, did so at his own risk, and is liable for the value of the currency received by him, to be estimated at the time when it should have been re-invested, allowing him a reasonable time after its receipt, to obtain the order and to re-invest the fund.

5. If the trustee changes the investment, with the consent

of the *cestui que trust*, who is of legal age, he is not liable for any loss growing out of such new investment.

6. The Court erred in refusing to allow the trustee to prove that any investment made by him, or any change of the investment prior to 1st January, 1863, was a prudent investment.

7. Counsel having asked the Court to give his charge to the jury in writing, it was his duty to do so, and he should have read it to the jury as written, without any additions or verbal explanations.

8. If counsel, in writing, requested the Court to give certain charges to the jury, such written request must be upon a point applicable to the facts in the case, and must not assume that to have been proven which is not in proof, and must, as written out by the counsel, be correct law, or the Court is not bound to notice it. If, however, the Court thinks proper to give the point in charge, with modifications, he may do so, and such modifications need not be in writing, but the whole taken together, as given by the Court, must be correct.

Judgment reversed.