IN THE

# Supreme Court of the State of Georgia,

## AT ATLANTA,

# DECEMBER TERM, 1869.

---

PRESENT—JOSEPH E. BROWN, CHIEF JUSTICE.
H. K. McKAY     } JUDGES.
HIRAM WARNER,   }

---

ELIZABETH JEPSON, plaintiff in error, *vs.* JAMES H. PATRICK, administrator, defendant in error.

When a widow elected to waive her dower and allow the land to be sold, and to take a life-estate in one-third of the proceeds of the sale, and the administrator loaned the money, in 1860, to a person who paid the interest for the benefit of the widow, annually, till 1864, when he paid the principal to the administrator in Confederate money, which was lost by the results of the war, and, in an action brought by the widow, the Judge charged the jury that the administrator was not liable, if in receiving the Confederate money, he acted in good faith and as a prudent man would have done: *Held*, that the charge was right, and this Court will not set aside the verdict of the jury rendered in favor of the administrator on this state of facts.

Confederate money. Administrators. Motion for new trial. Before Judge JOHNSON. Muscogee Superior Court. May Term, 1869.

James H. Patrick made his final return, as administrator of Thomas J. Patrick, in 1869, in which he sought to get credit for $140 00 for "Confederate money" then on hand.

VOL. XXXIX—37.

The widow of intestate, then Mrs. Jepson, objected to the allowance of said return.    It was allowed by the Ordinary and an appeal was taken before Judge Worrill presiding.    Mrs. Jepson's counsel read in evidence the transcript of the record of said administration from the Court of Ordinary and a relinquishment of dower by Mrs. Jepson, and an election by her, under the statute, of one-third of the proceeds of intestate's land in lieu of dower.    It was admitted that the land sold for $400 00, and the only controversy was as to one-third of that amount, which was by the administrator claimed to be represented by said $140 00.

Defendant's counsel examined the administrator, who testified that, as administrator, he sold said lands in July, 1860, for $400 00, on credit till November, 1860 ; that he then collected said $400 00, and loaned it to one Ligon, of Columbus, Georgia, who was the sole security on his administrator's bond, and took from him no security ; that he took Ligon's note at twelve months, and did not recollect whether he had renewed it; that Ligon paid Mrs. Jepson the interest on her third till he came and paid the whole $400 00, which was in November or December, 1864 ; that this payment was in Confederate treasury notes, of which it then took $57 00 to buy $1 00 of gold ; that he was then taking "Confederate money" for his own claims, having confidence in the Confederate cause ; that he put this money with his own, bought supplies, etc., without distinguishing between it and his own, and that it was wholly lost by the failure of the Confederacy. He said he had other "Confederate money" on hand at the collapse, and produced a package of it, saying he could not state that it was the identical treasury notes paid him by Ligon, but that it was at least of the same kind, and that he did not know Ligon was insolvent till after the war.

During this examination the counsel sought to prove by Patrick (and proposed to do so by the Ordinary also) what conversations he had as to the investment of said fund.    The evidence was rejected upon the ground that the Court of Ordinary was one of record.    Patrick was asked by his attorney, whether Ligon was solvent in November, 1860, but the

Court refused to allow him to answer the question. The testimony as to the fact and date of Ligon's payment to him and as to the fate of the "Confederate money" repaid to him, and as to his then taking such currency for his own claims, came in over the objections of plaintiff's attorneys.   In rebuttal, a witness, resident in Columbus, testified that as attorney and executor of an estate, he had long before November, 1864, refused to receive such currency, and forbidden the sheriff to accept it in his cases.   Another attorney, residing thirty miles from Columbus, testified that up to November, 1864, at his home, Confederate money was taken in payment of old debts, and it was considered unpatriotic to refuse it; that he was in Richmond, Virginia, after November 1st, 1864, and the people still took said currency.

Mrs. Jepson's counsel requested the Court to charge the jury, that when an administrator assents to an election of a life-estate of one-third of the proceeds of the sale of the deceased husband's land, he is bound to invest the money according to the direction of the Ordinary, and that if he did not obtain such direction but loaned the money out, without such direction, and afterwards it was returned to him in "Confederate money," which perished on his hands without fault, he is still liable.   The Court refused so to charge, but charged the jury that the single question for their consideration was, whether Patrick, in receiving said "Confederate money" from Ligon, acted in good faith, and as a prudent man would have done under the circumstances.   If he acted in good faith and as a prudent man would have done, he is not liable, otherwise, he is.

The jury found for Patrick.   Judge Worrill was succeeded by Judge Johnson, and before him a motion for new trial was made.   The grounds for new trial were, that the verdict was contrary to law and strongly and decidedly against the weight of the evidence; that Judge Worrill erred in admitting said evidence which was objected to, in refusing to charge as requested and in charging as he did.   The new trial was refused, and that refusal is here for review.

Moses and Garard, for plaintiff in error, said that the loan by Patrick was an unauthorized investment. Cobb's N. D. 230, Act 1841; Cobb's N. D. 333, Act 1845, Acts of 11th Dec., 1858, and 19th Dec., 1860, and 16th Dec., 1861, and sec. 1720 Code; that "may" means "must," Levy vs. Millman, 7th Ga. R., 89; Comyn's Dig. Parliament R., 22; Blacknell case, 1 Vernon 152; that therefore Patrick is liable. Powell vs. Evans, 5 Vesey, 842; Earl of Powell vs. Herbert, 1 Ves., 297; Pride vs. Tooks, 2 Bea, 430; Forrest vs. Elaes, 4 Vesey, 497; Piety vs. Stace, 4 Vesey, 622; 2nd Storys' Eq. Juris., 1274; Hall vs. Cash, 9 Peck R., 395; McIntosh vs. Hambleton, 35th Ga. R., 95; Campbell vs. Campbell, 37th Ga. R., 482; Campbell vs. Miller, 38th Ga. R., 311; the mixture with his own funds makes him liable. Williams on Ex., 1647; Wren vs. Kinton, 11 Vesey, 382.

Williams & Thornton, by M. H. Blanford, for defendant.

Brown, C. J., delivering the opinion.

We see no good cause of complaint at the rulings of the Court below on the admissibility of evidence in this case. The record shows that the widow, with the assent of the administrator, elected to have the lands of the estate sold and to take a life-estate in one-third of the proceeds of the sale as provided by the statute. The lands brought four hundred dollars at the sale, and the money was received by the administrator in the latter part of 1860, and loaned by him to one Ligon, who was one of the securities on his bond. Ligon paid the interest annually to Mrs. Jepson till 1864, when he paid the principal to the administrator, who received it in Confederate money, which, as the proof shows, was lost by the result of the war. And this suit is brought to hold the administrator liable for the amount.

It is insisted that he had no right to loan the money without an order of Court, or to invest it in anything but State

Jepson *vs.* Patrick, adm'r.

securities, and that he is liable for the loss in any event, as he loaned it on personal security, and especially, as it was loaned to Ligon, who was already a security on his bond. Whatever weight these objections might be entitled to, under other circumstances, they cannot avail the plaintiff upon the state of facts in this case. The money was not lost by the insolvency of Ligon. He paid it to the administrator, who received Confederate money in satisfaction of the debt.

But the question really involved in this case, is not the sufficiency of the security taken from Ligon, but whether the administrator had the right to receive Confederate money in payment of the debt due by Ligon. The evidence shows that Confederate money was generally received in payment of old debts at the time this administrator received it. If he acted in good faith, and exercised the prudence and caution of a reasonable man in receiving the money, and it was lost by the results of the war, we hold that he was not liable. If prudent, cautious, men were then receiving this currency in payment of debts due them, an administrator, who received it in good faith and lost it without fault on his part, will not be held liable. The question of good faith and due caution was substantially and fairly submitted to the jury, and we will not disturb the verdict. While any rule that can be laid down will operate a hardship in some particular case, we are satisfied less injustice and wrong will result from this ruling than from the one insisted upon by the plaintiff in error.

We have laid down substantially the same rule in the case of *Miller vs. Campbell*, 38 *Ga.*, 304, as applicable to a trustee, and in *Brown vs. Wright*, *ante* 96, which was the case of a guardian. And in the case of *Boyd vs. Sales*, decided at last term, *ante* 72, we held, that a payment to a sheriff in Confederate money, if no notice had been given him to refuse to receive it, amounted to a satisfaction of the judgment, and that it was error in the Court below in such case to open the judgment and order the *fi. fa.* to proceed. These decisions have all been made by a full Bench, and are the unanimous rulings of this Court. We trust the profession will

understand that the rule is firmly established by this Court, that no executor, administrator, guardian or other trustee, will be held liable who received Confederate Treasury notes in good faith, during the war, when they were the currency of the country, taken by prudent business men on their own account, and were lost by the results of the war, without the fault of the executor, administrator, guardian or trustee.

Let the judgment of the Court below be affirmed.