WHEATLEY & COMPANY *vs.* WEST.

1. The declaration sets forth a cause of action with legal fulness and distinctness.
2. The action being for the proceeds of cotton entrusted by the plain-

tiff to the defendants for sale, and, in the progress of the trial, the counsel of the parties having agreed in open court that the inquiry before the jury be restricted to the right of the defendants, under the evidence, to appropriate a certain amount of the money to a debt of a third person, such appropriation having in fact taken place, the admission or rejection of evidence on other questions, and the refusal of the court to grant a non-suit, were, by the agreement, rendered immaterial, and were not open to consideration on a motion for new trial.

3. If the court, in ruling out evidence, speaks in a low tone, so as possibly not to be heard by the jury, the objecting counsel should request that the ruling be repeated in a tone more elevated and distinct.

4. The charge of the court as set out in the bill of exceptions, is free from substantial error, and reasonably ample and minute. While some of the written requests to charge may not be objectionable, the refusal to charge the same, in view of the charge as given, is not cause for new trial.

5. It is error not to charge in writing, and in writing only, if request be made as prescribed in §244 of the Code. If the court is certain that counsel made the request in due time, and is not certain that the request was subsequently waived, a failure to comply is the denial of a clear statutory right, and a new trial should be granted. Jackson, J., dissented.

Pleadings. New Trial. Practice in the Superior Court. Charge of Court. Before Judge Crisp. Sumter Superior Court. April Term, 1878.

West brought complaint against Wheatley & Co., alleging that they received from him, in the fall of 1869 and spring of 1870, certain cotton, to be shipped to New York and sold on his account, they undertaking to account to him for the proceeds of sale after deducting expenses and commissions ; that the cotton was held in New York until May, 1871, when it was sold by order of plaintiff; that the proceeds, $7,000.00, after deducting expenses and commissions, were received by Wheatley & Co., who thereby became liable, and promised to pay, etc.

The defendants demurred to the declaration. The demurrer was overruled. They then pleaded the general issue. After the evidence for the plaintiff was closed, and a motion for non-suit was overruled, the defendants

pleaded specially that they had accounted to plaintiff, before suit brought, for the proceeds of the cotton except $136.86; also, that after the cotton was shipped, but before it was sold by order of plaintiff, the latter agreed with defendants that they might appropriate the net proceeds of eighteen bales to a claim which they held against James P. West, a brother of plaintiff, amounting to $1,000.00, or other large sum; that the amount thus appropriated, added to what they had paid the plaintiff, absorbed the entire net proceeds, except the sum above stated, $136.86.

The case proceeded, and various rulings were made by the court on the admission of evidence as to the amount for which defendants were liable, when, after the close of the testimony of the first witness for the defendant, counsel for the respective parties agreed that all of the proceeds had been accounted for except $750.00 appropriated to the claim against James P. West, and that the inquiry before the jury should be restricted to the right of defendants to make such appropriation. Thus many of the rulings theretofore made, and complained of in the motion for new trial, became immaterial to the issue into which the case was thus resolved. Upon this issue both defendants composing the firm of Wheatley & Co., testified emphatically that the agreement set up in the last plea was made by plaintiff, and that under it they appropriated the net proceeds of eighteen bales to the indebtedness of his brother to them. This was as positively denied by plaintiff. The testimony was distressingly conflicting. None other except that of the parties interested was introduced on this issue.

The jury found for the plaintiff. The defendants moved for a new trial upon the following, amongst other grounds:

1. Because the court overruled the demurrer to the plaintiff's declaration.

2. Because in excluding certain testimony, injurious to the defendants, the court spoke in a tone of voice " which might not have reached the jury," and without calling their attention to the ruling, and also failed to allude to it in his charge.

3. Because the court erred in not writing out and reading his charge to the jury, and having the same filed with the clerk as required by law ; the request so to do having been made by the defendants after the announcement of "ready" by the parties and before any evidence was offered.

4. Because the court erred in charging as follows: " If Mr. Ham West entrusted cotton to J. W. Wheatley & Co., to be sold for his benefit, they are accountable to him for the proceeds of that cotton ; without his assent they could not appropriate that cotton to the benefit of Pem West, or of any one else, no matter what Mr. Pem West might have said.    Mr. Ham West, himself, must have assented before there could be any such appropriation as that to bind Mr. Ham West.    If you find that there was no assent by Mr. Ham West to the appropriation, that will end your deliberations in this case, and you will find for the plaintiff."

5. Because the court erred in charging as follows : " The defendants claim that after the shipment of this cotton Mr. Pem West, the brother of the plaintiff, told them that he had an interest in that cotton, and that his interest might go to them in payment of a debt that he owed them ; that afterwards they reported that conversation to Ham West, and that Ham West agreed with them that eighteen bales of that cotton, that had been so shipped, should be used by Wheatley & Co., for the benefit of Ham West.    I say to you this, that if, after that cotton was shipped, Mr. Pem West stated to Wheatley & Co. that he had an interest in that cotton, and they might apply his interest to the payment of his debt, and afterwards, and before the sale of the cotton, they reported that fact to Ham West, and if he agreed with them that eighteen bales of said cotton should be appropriated to the benefit of Pem West, and Wheatley & Co. went forward and sold that cotton and appropriated eighteen bales, or the proceeds, to the benefit of Pem West, they are entitled to that amount as a credit against Ham West ; and in my judgment that is true, whether there

has been any proof before you of a debt of J. W. Wheatley & Co. against Pem West or not. Under that agreement, in my judgment, Wheatley & Co. would be responsible o Pem West for any appropriation which they may have made of that cotton. If they appropriated it to his benefit they must account to him for it, or, in other words, if Mr. Ham West agreed that eighteen bales of that cotton should go the benefit of Pem West, then, if Wheatley & Co. sold it, and put it to the benefit of Pem West, it was no concern of Mr. Ham West where it went. If he assented to it they must account to Pem West for it."

6. Because the court erred in charging as follows : "Right here, I will say to you that a promise to pay the debt, or default of another is not binding, is void, unless it be in writing, with certain exceptions, which, in my view, it is not necessary to give you in charge. If the agreement claimed by the defendants existed, and Wheatley & Co. sold the cotton and appropriated it in accordance with the agreement, that would be an executed contract, executed as against Ham West, and they would be entitled as against him to a credit for that sum."

7. Because the court erred in charging as follows : "Under our law, parties are competent witnesses; they are allowed to testify; it is your duty in all cases to reconcile the testimony, if you can do so. The law imputes perjury to no one, and juries should never do so except when it is unavoidable. If there is any theory that can be adopted which is consistent with the idea that all the witnesses have spoken the truth, that is the theory for you to adopt. When parties are witnesses, you are to pass upon it; that is, when witnesses are parties to the suit the jury are to judge of the degree to which their interest affects their credibility·"

8. Because the verdict was contrary to the charge as a whole.

As to the third ground, the court certified that at the opening of the case defendant's counsel requested that the charge be reduced to writing ; that the charge was not written be-

cause the court was of the impression that counsel afterwards agreed that the stenographer should take it down as delivered; that counsel does not recollect .uch agreement, and the court is not certain that he made it; that the charge was taken down *verbatim* by the stenographer, copied and delivered to counsel. The motion for new trial contains every material portion of the charge, and in the order given. The requests are deemed immaterial to the decision, and therefore omitted.

The motion was overruled, and the defendants excepted.

S. C. ELAM, for plaintiffs in error, cited as follows: Demurrer, Code, §§3760 *et seq.* Ruling in low voice, 31 *Ga.*, 127. Written charge, 58 *Ga.*, 573. Charge and refusals, 58 *Ga.*, 597; 59 *Ib.*, 54; 54 *Ib.*, 59; 58 *Ib.*, 564; 54 *Ib.*, 134; 39 *Ib.*, 586; 57 *Ib.*, 497. Credibility of witness, 10 *Ga.*, 153, 148; 59 *Ib.*, 559; Code, §3757.

N. A. SMITH, for defendant, cited as follows: Errors previously committed cured by agreement as to amount due, 51 *Ga.*, 528; 57 *Ib.*, 469; 59 *Ib.*, 812. Credibility of parties for jury, 41 *Ga.*, 604; 42 *Ib.*, 64; 43 *Ib.*, 282; 49 *Ib.*, 473; 51 *Ib.*, 174; 55 *Ib.*, 449; 57 *Ib.*, 117. Indistinct ruling, counsel should call attention to, 20 *Ga.*, 523; 26 *Ib.*, 374; 35 *Ib.*, 241. New trial not change verdict, 55 *Ga.*, 208: Charge, 55 *Ga.*, 317; 57 *Ib.*, 117; 58 *Ib.*, 606.

BLECKLEY, Justice.

1, 2, 3, 4. The numerous points made, down to the delivery of the charge of the court, and in respect to the contents of the charge itself, are insufficient to shake the judgment. The declaration sets forth a cause of action. The agreement of the parties put out of the case all questions of fact, except the controversy in regard to the right of the defendants to appropriate a certain part of the money to a debt due them from the plaintiff's brother. They made the appropriation: if with right, they are protected;

if without right, the plaintiff ought to recover. The charge of the court, as set out in the bill of exceptions, is reasonably ample and minute, and contains no substantial error. It covers the case so fully that, while some of the written requests to charge seem unobjectionable, the refusal to incorporate them as a part of the charge is not cause for a new trial. The low tone of the court in ruling out testimony, was not a matter to be passed over by counsel at the time without remark, and afterwards brought up as cause for a new trial. The low tone of a witness in delivering testimony might as well be thus passed, and then complained of. If the parties or their counsel, want higher tones, they must call for them, and not seem to acquiesce in those which they deem too faint and indistinct. Besides, suppose a tone in the superior court to have a wrong pitch, how are we to review it? We are not sure that mere sound is amenable to a writ of error. Perhaps, with the aid of score and scale, as in music, it might be brought before us and take its chances for reversal or affirmance.

2. The Code entitles the counsel of either party, on the final trial of a civil case, to request that the charge of the court to the jury be delivered in writing, and to have it so delivered. In this case the request was made, and the court failed to comply with it, being under the impression that the request was waived. What produced this impression is not stated, and it seems that, though the request itself was an absolute certainty, the supposed waiver of it was altogether uncertain. A doubtful waiver cannot defeat a right which has become vested to the exclusion of all doubt. The request came in due time, and was express. Unless it was expressly waived or withdrawn, the court should have complied with it. Not to comply was the denial of a clear statutory right; how clear, can be seen by a mere glance at sections 244 and 245 of the Code, which read as follows: "The judges of the superior courts of this state shall, in all cases of felony, and on the final or appeal trial of all civil cases tried before them, give their

charges to the jury in writing; that is to say, shall write out their charges and read the same to the jury, when the counsel for either party shall require them to do so; and that it shall be error for such judge to give any other or additional charge than that so written out and read. The charge so written out and read as aforesaid, shall be filed with the clerk of the court in which the same was given, and shall be accessible to all persons interested in the same; and the clerk shall give certified copies thereof to any person applying for the same, upon the payment of the usual fee."

These sections of the Code stand as a kind of constitutional law between bench and bar. They entitle the counsel to have the written word, instead of oral tradition. They provide for preserving and handing down the word as a sure and enduring memorial of what was actually delivered. There is to be no controversy over the text of the charge; no uncertainty as to what revelation fell from the bench into the jury box. The judge is not to speak, but to read; and when his manuscript is exhausted he is to become silent. It would seem that if counsel cannot depend upon the guaranty afforded them by these sections of the Code, they can depend upon no promise made to them in the law. If they cannot get a written charge, what can they get? What are they to trust in the whole compass of the statutes, if they are to be disappointed when they cite such peremptory language as that found in these two sections? The judge has no discretion; he must write out his charge and read it to the jury, and he must not "give any other or additional charge." 38 *Ga.*, 304; 54 *Ib.*, 231; 55 *Ib.*, 208; 57 *Ib.*, 285, (18). As to substituting stenographic reporting in place of first writing, and then reading the charge as written, that is for the general assembly, and not for the judiciary; and, as to there being no complaint that the charge was not correctly reported, it cannot be that in order to get a written charge, when any other is positively forbidden by statute, the plaintiff in error must show or suggest that the oral charge was not

correctly taken down by the reporter. The complaint is that the whole oral charge was illegal because the case was one for a written charge, and no other. What objection to a charge is more fatal than that every syllable of it was delivered contrary to law? Of course, no moral blame attaches to the presiding judge for the erroneous delivery. He acted under an impression which justified him morally, and would equally do so legally if the source of it could be verified. If it could be traced back to any actual waiver on the part of counsel, the whole point would disappear.

Judgment reversed.

WARNER, Chief Justice, concurred, stating that if the evidence clearly preponderated in favor of the verdict, he would not be inclined to reverse, notwithstanding the manifest error of the court in failing to reduce the charge to writing; but, as the evidence is nicely balanced, he concurs in the judgment of reversal for the error aforesaid.

JACKSON, Justice, dissenting.

Where the presiding judge, in not delivering his charge in writing, is under the impression that the request of counsel, so to deliver it, had been withdrawn, and where the entire charge, delivered in parol, was taken down by the stenographer of the court, *verbatim et literatim*, and there is no complaint that it was not taken down fully and correctly; and, where there is no other valid ground for a new trial, and no pretence that the plaintiffs in error were hurt by the omisssion of the judge to do the mere manual labor of writing out his charge, instead of letting the stenographer write it as he spoke it, I hold that the judgment of the superior court overruling the motion for a new trial ought not to be reversed, and I dissent from the judgment of this court reversing said judgment.