## BOYKIN *v.* McRAE.

No. 10796. MARCH 28, 1936. REHEARING DENIED MARCH 31, 1936.

*William G. Grant, Marion Smith, Harold Hirsch, James A. Branch, James W. Austin, E. A. Stephens, J. Walter LeCraw, William Schley Howard,* and *R. Emerson Gardner,* for plaintiff in error. *George G. Finch,* contra.

PER CURIAM. William G. McRae brought suit against John A. Boykin for alleged libel. The defendant answered, and filed a counter-claim based upon alleged libelous statements of the plaintiff concerning him, which he alleged had damaged him. The trial before a jury resulted in a verdict for the defendant for $1000. The plaintiff did not file a motion for a new trial, but carried the case by bill of exceptions directly to the Court of Appeals, complaining that the court below had committed alleged errors which he contended were controlling. The Court of Appeals overruled a motion to dismiss the writ of error, and reversed the judgment of the trial court. *McRae* v. *Boykin,* 50 *Ga. App.* 866 (179 S. E. 535). The motion to dismiss was based on the ground that a motion for a new trial was necessary, thus raising an important practice question. On petition of Boykin, the defendant in error, certiorari was granted. Only such parts of the decision as overruled the motion to dismiss and as reversed the judgment are under review in this proceeding. One of the alleged errors was that the judge failed to write out his charge and read it to the jury, in accordance with a timely and proper request. The bill of exceptions, as sued out by the plaintiff, McRae, contained the statement that the verdict against him was not demanded by the evidence. It will be assumed that the request referred to was in proper form and was duly presented to the trial judge. It was embodied in a paper which contained, in addition, certain requests to charge, stated in numbered paragraphs. The particular request here under consideration was in the first paragraph, which was not numbered. This document reached the judge two days before counsel began their arguments. The failure of the judge to comply with the request was, by direction of the court, explained in the bill of exceptions, as follows:

"Upon examining the paper the judge saw that it was separate requests to charge. He thereupon studied the separate requests and made the notation of them shown on the paper. He did not read the first paragraph, presuming that the portion of the paper there set out was a mere statement of the case. The first time the judge actually knew that there was anything in the paper about a written charge was when his secretary stated to the judge that counsel for the plaintiff had stated that such a request had been made. This was after the jury had been charged and had retired, but before a

verdict had been rendered. The judge sent for plaintiff's counsel and stated to him he was not aware of any such request being made. Plaintiff's counsel stated that it had been made. This paper . . was then referred to and the judge's attention called to the first paragraph. The judge thereupon said he had not seen this statement before. Plaintiff's counsel stated that it was not a trick, but was made bona fide. Plaintiff's counsel further stated that it would not amount to anything, as they were not going up on a motion for a new trial, but plaintiff's counsel added that plaintiff was not waiving anything. At the time this statement was made by plaintiff's counsel the judge, if he had construed the request as amounting to a request that he write out his charge and read it to the jury and file it with the clerk, could have brought the jury in, if he had not understood that the request would not be insisted upon, and could have withdrawn the charge as given verbally and as taken down by the official reporter, and have instructed the jury to disregard the same, and could have written out his charge and read it to the jury. . . Plaintiff's counsel did not himself hand the paper to the judge, and did not at any time before the charge was delivered call the judge's attention to there having been made to the court a request for a written charge, though counsel did ask the court if the court had received plaintiff's requests. After the conclusion of all the arguments and just before the charge was commenced and after the jury was reconvened for the sole purpose of hearing the charge, plaintiff's counsel arose and verbally and in writing . . requested the court to instruct the jury relative to a certain section of the Florida law, which he read to the court in the presence of the jury. At this time plaintiff's counsel did not suggest the necessity for putting the charge so requested in writing, nor did plaintiff's counsel suggest that there had been any issue along this line. At the conclusion of the charge as given by the court, the question arose of permitting the jury to render a verdict in the absence of the court. The plaintiff's* counsel expressed his willingness for a verdict to be received in the absence of the court. The defendant's counsel was unwilling for this to be done, unless the jury were furnished written forms which they could follow as models in rendering whatever verdict they might determine to render. Thereupon certain forms covering the different possible verdicts in this case were prepared and agreed upon by

counsel, and the court then had these written forms handed to the jury, and verbally instructed the jury as to the use of these forms. At the time this occurred, with the consent of counsel for both sides, no suggestion was made to the court by plaintiff's counsel that he had requested a written charge, or that anything was being done contrary to any request as to the manner of charging the jury; but, on the contrary, the plaintiff's counsel expressly agreed to what has just been stated."

The petition for certiorari contained, among others, an exception to the refusal of the Court of Appeals to dismiss the writ of error on the alleged ground that the failure of the trial judge to write out his charge and read it to the jury could be assigned as error only in a motion for a new trial, and that a direct bill of exceptions would not lie in such case.

■ It is error for the judge to refuse a timely and proper request to write out his charge and read it to the jury; and such error may be complained of in a direct bill of exceptions, without a motion for a new trial, where it appears that the verdict was not demanded. *Harris* v. *McArthur*, 90 *Ga.* 216 (4) (15 S. E. 758). That was a unanimous decision, rendered when the court was composed of three Justices. It was reviewed and limited in *Geer* v. *Dancer*, 148 *Ga.* 465 (4) (97 S. E. 406), but was not overruled so far as it applies to a case where the verdict was not demanded, but in such case it remains the law. To limit it further the concurrence of at least five Justices of the present bench is necessary (Code of 1933, § 6-1611), and not as many as five agree to do so. The decision is therefore controlling upon the practice question. See *Citizens Bank of Bainbridge* v. *Fort*, 142 *Ga.* 611 (83 S. E. 235). It follows that the Court of Appeals did not err in refusing to dismiss the writ of error.

■ But, under the facts of this case, was it cause for reversal that the judge failed to reduce his charge to writing and read it to the jury, as requested? This question must be answered in the negative. Under the recitals contained in the bill of exceptions, the request appears to have been waived. The facts, when stated according to their sequence, were as follows: (1) The request for a written charge was made two days before the arguments began. (2) "Just before the charge was commenced," the plaintiff's counsel "verbally and in writing . . requested the court to instruct

the jury relative to a certain section of the Florida law, which he read to the court in the presence of the jury. At this time plaintiff's counsel did not suggest the necessity for putting the charge so requested in writing." (3) "At the conclusion of the charge as given by the court, the question arose of permitting the jury to render a verdict in the absence of the court. The plaintiff's counsel expressed his willingness for a verdict to be received in the absence of the court. The defendant's counsel was unwilling for this to be done, unless the jury were furnished written forms which they could follow as models in rendering whatever verdict they might determine to render. Thereupon forms covering the different possible verdicts in this case were prepared and agreed upon by counsel, and the court then had these written forms handed to the jury, and verbally instructed the jury as to the use of these forms. At the time this occurred, with the consent of counsel for both sides, no suggestion was made to the court by plaintiff's counsel that he had requested a written charge, or that anything was being done contrary to any request as to the manner of charging the jury, but, on the contrary, the plaintiff's counsel expressly agreed to what has just been stated." (4) After the jury "had been charged" and had retired, but before a verdict had been rendered, the judge's secretary informed him that counsel for the plaintiff had stated that "such a request had been made," that is, a request that the charge be reduced to writing and read to the jury. "The judge sent for plaintiff's counsel and stated to him that he was not aware of any such request being made. The plaintiff's counsel stated that it had been made. This paper  .  . was then referred to and the judge's attention called to the first paragraph. The judge thereupon said he had not seen this statement before. Plaintiff's counsel stated that it was not a trick, but was made bona fide. Plaintiff's counsel further stated that it would not amount to anything, as they were not going up on a motion for a new trial, but plaintiff's counsel added that plaintiff was not waiving anything. At the time this statement was made by plaintiff's counsel the judge, if he had construed the request as amounting to a request that he write out his charge and read it to the jury, and file it with the clerk, could have brought the jury in if he had not understood that the request would not be insisted upon, and could have withdrawn the charge as given verbally and as taken down by the official

reporter, and could have instructed the jury to disregard the same, and could have written out his charge and read it to the jury."

The *oral* request for a charge on the Florida law evidently did not contemplate a written charge upon this subject, and the agreement of counsel that the judge might "verbally" instruct the jury as to the proper use of the written forms of verdict was utterly inconsistent with the previous request for an entire written charge. It is true that the judge had not as yet noticed the request for a written charge, as filed two days previously; but these facts were pertinent for his consideration when he did discover it and had to determine what he would then do with it. Upon the question of waiver, the judge's ignorance of the request at that time is immaterial. When the request for a written charge finally came to the attention of the judge, he sent for the plaintiff's attorney, who stated "that it would not amount to anything" in view of the future procedure contemplated. The attorney added that the plaintiff was not waiving anything; but if the request did not amount to anything, there was nothing to waive. To say that the request did not amount to anything was to describe it as being totally worthless. This was an expression of the attorney's own conception of its unimportance at that time, and stronger language could hardly have been employed. It could have had no other meaning except that, under the procedure which the plaintiff intended to adopt, the failure of the judge to comply with the request would be of no consequence, or would not afford any cause for complaint, even though the plaintiff did not waive compliance. It was in effect a statement that, in view of the anticipated procedure, the matter was not of sufficient importance to require a suspension of the trial at that stage for the purpose of complying with the request, because if the plaintiff did except, the exception would be without merit. The bill of exceptions recites in substance that the judge reached the conclusion "that the request would not be insisted upon;" otherwise he "could have withdrawn the charge as given verbally and as taken down by the official reporter, and could have instructed the jury to disregard the same, and could have written out his charge and read it to the jury." From all the circumstances, this conclusion was abundantly authorized, and the statement of counsel as to non-waiver did not require a different action by the trial judge.

One may say he will not waive, and yet waive. *Cumming* v. *State,* 155 *Ga.* 346 (2), 349 (117 S. E. 378).

In two instances before the case was submitted to the jury under the charge of the court, the action of the plaintiff's attorney, as outlined above, indicated an abandonment of the request. Finally it was declared that the request did not amount to anything. While at the time of the last statement there was a reservation against waiver, there was no reservation on the previous occasions. From all the facts appearing, there can be no reasonable inference other than that the request was waived; and in this view the question of estoppel need not be considered.

So much of the decision in *Whealley* v. *West,* 61 *Ga.* 401 (4), as related to "express waiver" was obiter, there being *nothing* to show the basis of the judge's "impression." Furthermore, the decision in that case was rendered by a divided court, and will not be followed to the extent of holding that such a request once presented can not be waived except in express terms. Except for the decision in that case, which the Court of Appeals doubtless felt constrained to follow, a different result might have been reached by that court.

On motion for rehearing, the opinion as originally filed in this case has been revised, with the result that the foregoing is now delivered as the decision of the court.

*Judgment reversed. All the Justices concur, except*

RUSSELL, Chief Justice, dissenting. I can not for many reasons concur in the judgment of my learned colleagues. However, I shall content myself with stating only a few of these reasons at the present time. I can not agree to the principle announced in the first headnote, in which it is said that "It is error for the trial·judge to refuse a timely and proper request to write out his charge and read it to the jury; and such error may be complained of in a direct bill of exceptions, without a motion for a new trial, where it is shown that the verdict was not demanded." The Code of 1933, §§ 81-1102, 81-1103, gives litigants in Georgia an unqualified right as follows: "The judges of the superior, city, and county courts shall, when the counsel for either party requests it before argument begins, write out their charges and read them to the jury, and it shall be error to give any other or additional charge than that so written out and read." § 81-1102. "The charge so written out and read shall be filed with the clerk of the court in which it was given, and

shall be accessible to all persons interested in it; and the clerk shall give certified copies thereof to any person applying therefor, upon payment of the usual fee." § 81-1103. Recognizing the constitutional distinction between the legislative and the judicial departments of this State, I consider the. qualification in the headnote limiting the right to cases "where it is shown that the verdict was not demanded," only, as judicial legislation. No such burden is imposed by the law as set forth in the Code. This court, however, as well pointed out by Judge Sutton in the opinion of the Court of Appeals, in the two earliest decisions it ever rendered, recognized the wisdom of such a rule. Judge Cobb, in *Cawthon* v. *State,* 119 *Ga.* 395 (46 S. E. 897), adverted to the earliest history of the principle now embodied in the sections quoted. The real purpose in view in the provisions of the law upon this subject was pointed out by Judge Jackson in *Fry* v. *Shehee,* 55 *Ga.* 214, in the following words: "The great object of the statute is to prevent disputes between the judge and counsel as to what was the charge; and the only way to prevent them is to require the courts to conform rigidly to the statute. Indeed, the better practice would be for the judge to put every charge in every case of importance in writing. It may be a little troublesome and laborious, but it would avoid much wrangling and controversy, and sometimes a good deal of hard feeling, and would make the practice more pleasant both for bench and bar, and insure fairness in exceptions and assignments of error here." Judge Bleckley's graphic analysis of the subject, in *Wheatley* v. *West,* 61 *Ga.* 401, has been cited and approved in the decision of the Court of Appeals now under review. I can add nothing to what was so well said by Judge Sutton; and yet I must demur to the declaration in the opinion of the majority of this court that what was said by Judge Bleckley in the matter under consideration was mere obiter. The word "obiter" means a thing apart from the matter under consideration—dehors the record. It is defined in Bouvier's Law Dictionary as "by the way; in passing. 'This point was not the principal question in the case, but the law concerning it is delivered obiter only, and in the course of the argument.' 2 Bl. Com. 238." And Funk & Wagnall's Standard Dictionary says: "By the way; incidentally; not in necessary connection with the issue to be determined." Webster's International Dictionary defines the word as "on the way . . in passing; in-

cidentally; by the way; . . obiter dicta . . an incidental and collateral opinion uttered by a judge, and therefore not material to his decision or judgment; not binding." The majority of the court is authorized by law, if it sees fit, to disregard Judge Bleckley's views, because one member of the court as then constituted disagreed with him. However, I can not bring myself to agree that what Judge Bleckley said on this subject was not absolutely apropos to the subject he was dealing with. I know that my colleagues will not complain of my dissenting, for I was committed to the same view which I now entertain when I had the honor of delivering the unanimous opinion of the Court of Appeals in _Homer_ v. _State,_ 6 _Ga. App._ 667 (65 S. E. 701), and later when I concurred with the other members of that court in the masterly opinion written by Hill, C. J., in _Forrester_ v. _Cocke,_ 6 _Ga. App._ 829 (65 S. E. 1063). As to the case last cited, extreme pressure of the business of the court prevented my calling attention to the words, "except where the evidence demands the verdict," and therefore from entering a special instead of a general concurrence. I agree with the majority of this court that the failure or refusal of a judge, for any reason, to write out his charge and read it to the jury, and then hand it immediately to the clerk, is an error which may be reviewed by a direct bill of exceptions and without any motion for a new trial; this for the reason that the error is fundamental and controlling. In the circumstances set forth in the Code, it is an unlawful act for the judge to attempt to give anything but a complete charge in writing, which he can not alter after having delivered it. To this end he is required to hand it to the clerk, as its only custodian; and the clerk is required, upon payment of his fee, to give _any person interested_ a certified copy of the charge. The most that can be said against any charge of a court is that it was, in some respect specified, erroneous and contrary to law. Is it less subject to attack when the entire charge is directly contrary to law? To use the language of Judge Bleckley in _Wheatley_ v. _West,_ 61 _Ga._ 401, 409, "What objection to a charge is more fatal than that every syllable of it was delivered contrary to law?"

In the second headnote of the opinion of the majority the decision of the Court of Appeals is held to be erroneous, and the judgment is reversed because, "Under the facts of this case, the failure of the judge to comply with such a request was not cause for re-

versal." From this ruling I dissent in toto, being of the opinion that my colleagues have misapprehended the cardinal rules upon which the doctrine of waiver is based, and they assume, in construing the conduct of counsel for the plaintiff in the lower court (defendant in error here), *that he knew that the trial judge had not read his request* that the entire charge be delivered in writing, and that he knew that the charge actually given was not all in writing. There is nothing in the entire record showing either directly or by circumstances that Mr. Finch knew at the time the charge as given was delivered that it had not been reduced to writing according to his request, the receipt of which is admitted by the judge; or that he knew that the judge had not read his written request, preferred seemingly at a time sufficient to have given the judge time to prepare a written charge and read it to the jury. Waivers are either express or implied. The opinion of the majority of this court contains no expression that indicates that they claim that there was an express waiver of the request for compliance with the Code, §§ 81-1102, 81-1103, requiring that a charge in writing be read to the jury. The majority hold that the record presents circumstances from which a waiver may be implied. I am not aware of any principle by which the doctrine of waiver can be so extended that one can waive something he has no right to waive. The Code of 1933, § 81-1101, provides: "In the trial of causes in any of the courts of this State, either party or his counsel may make a written request to the court to charge the jury, at any time before the jury retires to consider of their verdict, and without submitting the same to the counsel of the opposite party. Requests in writing to charge the jury may be made in any case, and at any time before the charge is begun." Viewing the case most strictly, since the plaintiff had already requested a charge in writing, and as far as he knew the judge had considered it and of course was complying with it, the plaintiff had no right to make a request that the judge's written charge then in his hands should be changed, but there was no conflict between this and the prior request which would introduce a waiver into the question. The request for a charge in writing was made two days before the argument in the case began. The request that that written charge should be amended was made after the argument had been completed. Under the law, the plaintiff had no right to ask that the judge amend his charge, any more than

the defendant had the right to be permitted to participate in the judge's decision as to whether he would put his charge in writing. The court was there to obey the law. It must be presumed that if the judge had not omitted to read the request, he would have complied with it by reducing his instructions to the jury to writing, reading them only to the jury, and immediately handing them to the clerk to see that they were not thereafter altered. Since it appears from the record that there was no conflict in the request with any possible instructions that could have been given in behalf of the plaintiff, and since Mr. Finch did not know that the judge was not going to give a complete charge in writing, read to the jury, there was in fact no right at the time existent in his client, the plaintiff, that could be waived; for one can not waive that which he never had, has not, and that it is not possible for him to possess or avail himself of. Certainly there could be no waiver on the part of Mr. Finch of the right he had under the original request for a charge in writing to be read to the jury and delivered to the clerk, from the refusal of the judge to give instructions as to the Florida law. If the request had already been complied with so far as the preparation of the charge about to be delivered by the judge was concerned, the refusal of the judge to embody in the written charge the principle sought to have stated to the jury would not in any sense of the word affect a waiver of the previous request of plaintiff's counsel. There was no conflict between this and the prior request, because, if the judge had desired to incorporate a ruling upon the subject of Florida law, the request was made before the argument began, and he could easily have reduced it to writing. If there were any hint in the record that plaintiff's counsel knew at this time that the judge had failed or refused, for any reason, to grant his request for a charge in writing, preferred two days before, then it may be that a different case would have been presented. As matter of law, it can hardly be contended that blame should be attributed to counsel for the plaintiff from the circumstance of the omission of the judge to read the request that the charge be delivered in writing. I agree fully with the conclusion of the Court of Appeals as to there being no waiver of the request for a charge solely and wholly in writing, growing out of what transpired in the conference with Mr. Finch, counsel for the plaintiff, after the jury had been charged by the court, which conference was invited by the

court. From the fact that the trial was practically completed and that the jury had retired to the jury-room, and the lack of any statement in the bill of exceptions that the judge was upon the bench at the time of his conversation with Mr. Finch, there can be no other inference than that the conference occurred in the private office, commonly called the "chambers" of the judge, during a temporary recess, awaiting the return of the jury. The conversation, therefore, must be treated as between individuals, and therefore to some extent confidential. But pretermitting any reference to proprieties, I can not see how there can be wiped out of consideration the last remark of counsel, as certified by the judge, that the "plaintiff was not waiving anything." It appears from the record that Mr. McRae, while enjoying the services of Mr. Finch, was also representing himself, as any one has the right to do; and the judge made no inquiry as to Mr. McRae's wishes in the matter, though he was the only plaintiff in the case, and his counsel, speaking for him, distinctly told the judge that the "plaintiff was not waiving anything."

The statements in the bill of exceptions which the judge certifies he required to be inserted are absolutely true, and are not to be disputed here or elsewhere. However, candor compels the statement that a large portion of the inset in the bill of exceptions is argumentative and not the statement of facts, but a recital of the deductions of the learned trial judge. In arguendo, the judge states that "if he had construed the request as amounting to a request that he write out his charge and read it to the jury, and file it with the clerk, [he] could have brought the jury in if he had not understood that the request would not be insisted upon, and *could have* withdrawn the charge as given verbally and as taken down by the official reporter, and *could have* written out his charge and read it to the jury." But he does not certify that he "would have" done any of of these things, and furthermore he did not communicate to Mr. Finch even that he could have done any of these things, nor intimate to him that he would; and as the majority of the court differ with the writer upon this point, I will only say that in the circumstances appearing in this portion of the bill of exceptions it is the opinion of the writer that after a judge has just learned for the first time that a request for a charge in writing in the terms of §§ 81-1102 and 81-1103 of the Code was on a paper that

the clerk of his court, at the request of the counsel of one of the parties in the case on trial, had handed him two days before, he should immediately return the jury to the court-room and expressly withdraw the charge already delivered by him. He should take a recess of sufficient length to have a charge in full, in accordance with the Code sections, reduced to writing, and read the same to the jury, and hand it at once to the clerk of the court for the purposes indicated in several decisions of this court as well as expressly required by the Code. No matter how tricky the parties were, no matter if Mr. Finch, as counsel for the plaintiff, did not think taking the case up would amount to anything, there stood the law of sections 81-1102 and 81-1103, and there stood the imperative warning of Mr. McRae's counsel that "plaintiff was not waiving anything." No words could be more exhaustive than the last, because if he waived nothing he would be asking for even the smallest imaginable thing that might appertain to his rights. There is not a scintilla of evidence indicating that at the time the agreement was made as to the forms of verdict this could constitute a waiver of a charge in writing. The charge of the court instructs the jury how to make a verdict. The verdict is merely the record of the result of the trial. The charge had been delivered, and was complete in every respect. If, as Mr. Finch had a right to believe, the request for a charge in writing had been complied with, then the mere form of a verdict was a mere matter of convenience, not affecting any right of the parties, and not in conflict with the provisions of the Code sections. It certainly constituted no waiver that the instructions to the jury, both as to the law and the evidence, should be reduced to writing.

As this is a mere dissent, and further consumption of time and space is fruitless, I deem it unnecessary to state other reasons which can be presented in opposition to the opinion of my esteemed colleagues. One reason why the provisions of sections 81-1102 and 81-1103 should not be minimized and whittled away was stated in a civil case by Broyles, P. J., where a new trial was granted because the judge retained his charge overnight. In *Ashley-Price Lumber Co.* v. *Henry*, 23 *Ga. App.* 94 (98 S. E. 185), Judge Broyles said: "In the instant case, instead of filing with the clerk of the court the typewritten charge as soon as it had been read to the jury, the judge retained it in his possession, and did not

deliver it to the clerk until the following day. This was reversible error, and a new trial of the case is required."