23926.   McRAE *v.* BOYKIN.

DECIDED FEBRUARY 18, 1935.   REHEARING DENIED MARCH 1, 1935.

*George G. Finch,* for plaintiff.

*William G. Grant, Marion Smith, James A. Branch, James W. Austin, E. A. Stephens, J. Walter LeCraw, William Schley Howard, R. Emerson Gardner,* for defendant.

SUTTON, J. William G. McRae brought suit against John A. Boykin for alleged libel. The defendant answered and filed a counter-claim, based on alleged libelous statements of the plaintiff concerning him, which he alleged had damaged him. The case proceeded to trial before a jury and the trial resulted in a verdict for the defendant for $1,000. Plaintiff made no motion for new trial, but sued out a writ of error direct to this court, assigning error upon certain rulings, orders, and charges of the court, as being necessarily controlling upon the final verdict and judgment in the case. No brief of the evidence adduced upon the trial of the case was incorporated in the bill of exceptions, or attached thereto and properly identified, or sent up with the record and duly approved.

■ The defendant moves to dismiss the writ of error, on the ground that the assignments of error are as to matters which do not necessarily control the verdict and judgment; and that the recitals in the bill of exceptions that the rulings complained of were controlling and affected the verdict were conclusions of the plaintiff in error, and that the bill of exceptions should point out how and in what manner such rulings entered into, affected, and necessarily controlled the final verdict and judgment. Exceptions were taken to and error assigned on the rulings complained of. Exceptions were also taken to and error assigned on allowing the verdict to be taken and judgment entered, because the alleged erroneous rulings entered into and affected the final judgment. Under the ruling in *Lyndon* v. *Georgia Railway & Electric Co.,* 129 *Ga.* 353, 360 (58 S. E. 1047), this was sufficient. "In any case where the judgment, decree, or verdict has necessarily been controlled by one or more rulings, orders, decisions, or charges of the court, and the losing party desires to except to such judgment, decree, or verdict, and to assign error on the ruling, order, decision or charge of the court, it shall not be necessary to make a motion for new trial, nor file a brief of the evidence, but the party complaining shall be permitted to present a bill of exceptions containing only so much of the evidence or statement of facts as may be necessary to enable the Supreme Court to clearly understand the ruling,

order, decision, or charge complained of." Civil Code (1910), § 6144. The method of bringing cases to this court by direct bill of exceptions, as pointed out in this section of the code, without filing a brief of the evidence, "does not authorize the segregation and bringing to this court, by direct bill of exceptions, of every alleged error committed in the course of a trial. It only authorizes this to be done by direct and brief form of bill of exceptions in cases where the judgment, decree, or verdict has necessarily been controlled by such rulings, orders, decisions, or charges; and this must be made to appear." *Henderson* v. *State,* 123 *Ga.* 739 (2) (51 S. E. 764). The act of 1898 (Ga. L. 1898, p. 92) "renders unnecessary the filing of a motion for a new trial, when the case depends upon a controlling question of law and the complaint is that the trial judge committed a vital error with respect to the same. The losing party in any case might very properly concede that, under the evidence and a given charge, the verdict against him, assuming the charge to be correct, was demanded; yet, at the same time, he might with abundant reasons insist that because of error in the charge, the jury were constrained to find as they did. The correction by this court of such an error results in a new trial." *Taylor* v. *Reese,* 108 *Ga.* 379, 381 (33 S. E. 917) ; *Taylor* v. *State,* 108 *Ga.* 384 (34 S. E. 2). This act was but an adoption in more explicit terms of the common law already in force in this State. *Taylor* v. *Reese,* supra. Prior to that act the Supreme Court had held that it would not grant a new trial in cases where no motion therefor had been made in the lower court except that the errors complained of "were serious and likely to change the verdict." *Roberts* v. *Neal,* 62 *Ga.* 163. In *Trippe* v. *Wynne,* 76 *Ga.* 200, it was intimated that the court would, in such an instance, only pass upon the error where the same was "material." In *Collier Co.* v. *Murphey,* 108 *Ga.* 777 (33 S. E. 641), decided after the above act of 1898 was adopted, it was held that an erroneous ruling of the trial court as to who was entitled to the opening and closing argument before the jury would not be reversed on a direct bill of exceptions, unless the same was shown to be injurious to the excepting party. In *Ocean Steamship Co.* v *Hamilton,* 112 *Ga.* 901 (3) (38 S. E. 204), it was held that the error complained of in a direct bill of exceptions should be one which "singly or in connection with another or others" necessarily controlled the verdict, and

that if it was not, the direct exception was without avail. See also *Ray* v. *Morgan,* 112 *Ga.* 923 (38 S. E. 335); *Darien Bank* v. *Clarke Lumber Co.,* 112 *Ga.* 947, 951 (38 S. E. 363); *Cable Co.* v. *Parantha,* 118 *Ga.* 913 (45 S. E. 787).

Counsel for the defendant contends that this court has no juris-diction to pass upon any question made in the bill of exceptions, for the reason that the verdict was not necessarily controlled by any of the rulings, decisions, or charges complained of, within the meaning of said act of December 20, 1898, embodied in the Code of 1910, § 6144. · In order to determine the true interpretation to be placed upon this act · it is necessary to consider the practice as it existed prior to its passage. An able and elaborate discussion of this question will be found in *Cawthon* v. *State,* 119 *Ga.* 395, 402 (46 S. E. 897), et seq., in which it was in substance and effect held: Cases may be carried to the Supreme Court "on a bill of exceptions specifying the error or errors complained of in any decision or judgment." See 1 *Ga.* viii, ix. In the first criminal case brought to the Supreme Court no motion for a new trial was made, but the case was brought to that court upon a bill of excep-tions assigning error upon a ruling refusing to continue the case, upon rulings made while the jury was being impanelled, and upon rulings made on the admission and rejection of evidence. The court entertained jurisdiction of the writ of error, and reversed the judgment. *Sealy* v. *State,* 1 *Ga.* 213 (44 Am. D. 641). In the ‘next criminal case brought to the Supreme Court, the bill of exceptions assigned error upon various rulings made during the trial, upon the overruling of a motion to arrest the judgment, and upon the overruling of a motion for a new trial. The court enter-tained jurisdiction of this writ of error, and granted a new trial to the defendant. Both of these cases were brought to the Supreme Court under the law as set out above as contained in the 1 *Ga.* viii, ix. "While no question was made in either case or directly passed upon by the court as to what was the proper practice to be pursued, or what was the proper construction of the act organ-izing the court, the practice followed by lawyers of the standing of those who represented the plaintiffs in error," Hines Holt and Henry L. Benning, "and acquiesced in by such lawyers as Levi B. Smith, E. H. Worrill, and Absalom H. Chappell, who repre-sented the State in the respective cases, is entitled to very grave

consideration when it is to be determined what was the opinion of the profession at that time as to the practice to be pursued in bringing cases to" the Supreme Court. "An examination of the records of" the Supreme Court "in the earlier volumes will show that the practice above indicated was followed generally by the profession throughout the State, that is, the losing party determined by himself whether he would bring an error of law to" the Supreme Court "by direct bill of exceptions or embody it in a motion for new trial if the ruling was of such a character as could be properly made the ground of such a motion."

It is now contended that, since the passage of the act of 1898, this court has no jurisdiction to entertain a direct bill of exceptions in any case where a verdict has been rendered and a motion for a new trial would be an appropriate remedy, until such a motion has been made and passed upon by the trial judge, except in those cases where it appears distinctly from the bill of exceptions and the record that the ruling complained of was of such a character as to constrain the jury to find the verdict rendered, that is, the ruling must be of such a character that no jury could have legally rendered any other verdict than the one complained of. It is claimed that the effect of the act of 1898 is to abolish altogether the right of this court to review by direct writ of error any other rulings than those of the character above indicated, and that the effect of the act was to work a radical change in the practice which was more or less followed from the time the Supreme Court was established down to the passage of the act of 1898, and even since that date. Our appellate courts have on many occasions commended the practice of making a motion for new trial before filing a bill of exceptions, thus giving to the trial judge an opportunity to review his rulings which are complained of. Neither the Supreme Court nor the Court of Appeals has ever held, so far as we are advised, that it was absolutely necessary to make a motion for new trial in order to give them jurisdiction to review an error of law in a ruling made in the trial of a case. If the act of 1898 be construed as contended for by counsel for the defendant, it would be applicable to very few cases; and if it be given the construction which we give it, it preserves to litigants a right which has existed ever since the establishment of the Supreme Court. We do not think it was the purpose of the legislature to abolish this long-

established practice, nor do we think the language of the act, properly construed, has this effect. In the case of *Taylor* v. *Reese,* supra, the opinion indicates that it was the opinion of the Supreme Court at that time that the act of 1898 was only declaratory of the existing law, being a recognition of the practice which had long been followed with the approval of the bar and without the disapproval of the bench. It is impossible for anyone to carefully examine the assignments of error dealt with in *Taylor* v. *State,* supra, which was the case in which the bills of exception referred to in *Taylor* v. *Reese* were passed upon, and reach the conclusion that the act of 1898 was then construed as is now contended for by counsel for the defendant. None of the rulings which were considered and passed upon in that case were of such a character as to constrain the jury to find the verdict rendered. The alleged errors were, as held in *Taylor* v. *Reese,* supra, simply of such a character as deprived the accused of a substantial right, and, using the language of the learned Justice who wrote the opinion, "the verdicts actually rendered were necessarily so far controlled by the judge's action as to necessitate a new trial." A careful consideration of the opinion in *Taylor* v. *Reese* as well as that in *Taylor* v. *State* can not lead to any other conclusion than that it was the opinion of the Supreme Court, for which the author of those opinions was speaking, that under the act of 1898 the losing party could by a direct bill of exceptions complain of any error committed during the progress of the trial which deprived him of a substantial right and required a reversal of the judgment of the trial court. These opinions were concurred in by six Justices. It is now claimed that in subsequent opinions a different rule is laid down. Any ruling or language in conflict with the ruling in *Taylor* v. *Reese* that may be contained in the cases of *Ocean Steamship Co.* v. *Hamilton, Ray* v. *Morgan,* and *Darien Bank* v. *Clarke Lumber Co.,* supra, can not be treated as modifying the decision in *Taylor* v. *Reese,* for the reason that none of the decisions named was concurred in by six Justices. There is nothing in *Parker* v. *Medlock,* 117 *Ga.* 813 (45 S. E. 61), to conflict with the view now presented, for the reason that it was simply ruled in that case that a direct bill of exceptions would lie in a case where the ruling complained of controlled the verdict. This was true before the passage of the act of 1898. If there is anything said or ruled in

*Smith* v. *Smith,* 112 *Ga.* 351 (37 S. E. 407), or in *Cable Co.* v. *Parantha,* supra, which is in conflict with *Taylor* v. *Reese,* supra, these decisions must yield to the earlier ruling. *Cawthon* v. *State,* supra.

In the case of *Henderson* v. *State,* supra, the ruling of the majority in *Cawthon* v. *State* was somewhat criticised. However, the court in *Lyndon* v. *Georgia Ry. & El. Co.,* supra, said: "The case of *Henderson* v. *State* . . not only produced a diversity of opinions among the members of this bench, but it is feared has been somewhat misapprehended by some of the members of the bar." The majority of the court held that the act of 1898 "sought to provide a brief method for excepting to a verdict or judgment and assigning error on rulings which were necessarily controlling." It was then pointed out that in the *Henderson* case, no attempt was made to except to the final verdict and judgment. However, the bill of exceptions in the *Lyndon* case assigned error upon the final judgment, and also assigned error on a ruling refusing to allow an amendment, and it was stated that such "erroneous ruling entered into and affected the final judgment, or, as the bill of exceptions alleged, controlled it." The court then said that the plaintiff in error could have said no more. The *Cawthon* case was followed in *Denson* v. *State,* 150 *Ga.* 618 (104 S. E. 780). So we reach the conclusion that an error of law may be corrected by this court, when brought up for review by a direct bill of exceptions, which assigns error upon the final judgment, where the commission of such error by the court below deprived the losing party therein of a substantial right; and where it is shown that the error is harmful and prejudicial, and necessarily affected the verdict.

■ On October 12, 1933, the defendant took, under sections 5904 et seq. of the Civil Code of 1910, the depositions of S. J. Tillman in Washington, D. C. These depositions were taken before a notary public. It was agreed between the parties at that time that "objections may be interposed to questions and answers at the trial of the case both as to form and substance." This witness refused to answer certain questions propounded to him by plaintiff's counsel on cross-examination, either flatly refusing to answer the same or making flippant and meaningless replies to such questions. Plaintiff contends that he desired correct answers to these questions for the purpose of laying a foundation for impeaching the credi-

bility of this witness. On December 4, 1933, before the case proceeded to trial, plaintiff filed in the trial court his exceptions and motion to suppress these depositions of Tillman, serving, before the trial of the case, counsel for the defendant with a copy of such exceptions and motion. The grounds of these exceptions and motions were that the witness had refused to answer certain questions propounded to him upon cross-examination by plaintiff's counsel, the answers to which would have been material in impeaching the credibility of the witness. The court overruled the motion to suppress the depositions, and allowed counsel for the defendant to read the depositions to the jury; to which ruling and judgment the plaintiff excepts in the bill of exceptions in this case. It appears from the bill of exceptions in this case, as corrected by the trial judge, that it was discovered that there was a defect in the certificate of the commissioner taking these depositions, and an order was taken sending the depositions back to the commissioner for correction, that at this time counsel for the plaintiff knew of the insufficient answers of Tillman to the questions propounded to him upon cross-examination, and that "plaintiff and his counsel did not file any objections or exceptions to the depositions until the case was announced on trial."

It is true that "It is the right of a witness to be examined only as to relevant matter, and to be protected from improper questions." Civil Code (1910), § 5870. It is also the duty of an attorney at law to advance "no fact prejudicial to the honor or reputation of a party or a witness, unless required by the justice of the cause with which" he is charged. Civil Code (1910), § 4965. It has likewise been said that it must not be forgotten that the law has regard for the rights of a witness as well as those of a party. *White* v. *Knapp*, 31 *Ga. App.* 344 (120 S. E. 796). However, it is likewise true that "The right of cross-examination, thorough and sifting, belongs to every party as to the witnesses called against him." Civil Code (1910), § 5871. This code section is merely a statute declaratory of a principle or rule of ancient standing in the courts of justice. *Atlanta & Birmingham Ry.* v. *McManus*, 1 *Ga. App.* 302, 305 (58 S. E. 258). If the defendant examines a witness on a single point only, it is the right of the plaintiff's attorney to cross-examine such witness on all points; and even if he has been examined by the defendant only on a formal point, yet the plain-

tiff would have the right to cross-examine such witness as to all points. The rule might be stated to be that when a witness is sworn by one party in chief, the other party has, in general, the right to cross-examine him at large. *Dawson* v. *Callaway,* 18 *Ga.* 573; *Aiken* v. *Cato,* 23 *Ga.* 154; *Lunday* v. *Thomas,* 26 *Ga.* 537. Cross-examination of the witness of an adversary is a substantial right, the preservation of which is essential to a proper administration of justice, "and extends to all matters within the knowledge of the witness, the disclosure of which is material to the controversy," and it is error to deny or abridge this right. *News Publishing Co.* v. *Butler,* 95 *Ga.* 559 (22 S. E. 282). A denial or abridgment of this substantial right of a party to thoroughly cross-examine a witness of his adversary is a material error and requires the grant of a new trial. *Becker* v. *Donalson,* 133 *Ga.* 864, 869 (67 S. E. 92); 8 Cum. Dig. 1038, 1039.

"A witness may be impeached by disproving the facts testified to by him." Civil Code (1910), § 5880; *Middle Georgia &c. R. Co.* v. *Barnett,* 104 *Ga.* 582, 584 (30 S. E. 771). A witness may be impeached by contradictory statements previously made by him. A witness may be impeached by evidence as to his general bad character. Civil Code (1910), §§ 5881, 5882. The provisions of these sections of the code are not exhaustive as to the manner in which a witness may be impeached. *Yaryan Rosin Co.* v. *Haskins,* 29 *Ga. App.* 753 (116 S. E. 913). Of course, the ultimate credit to be given to the testimony of a witness is for the jury, after hearing all the evidence, impeaching and otherwise. Civil Code (1910), §§ 5883, 5884; *Sappington* v. *Bell,* 115 *Ga.* 856 (42 S. E. 233).

Where it is sought to impeach a witness by himself in order to disparage his testimony, this is properly done by cross-examination of the witness. *Goodwyn* v. *Goodwyn,* 20 *Ga.* 600. The questions propounded to the witness in this case and which he refused to answer were pertinent for the purpose of affecting the credibility of the witness. *East Tenn. &c. Ry. Co.* v. *Daniel,* 91 *Ga.* 768 (18 S. E. 22). Great latitude should be allowed by the court where the purpose of the interrogatories is to impeach or discredit the witness by showing his bias or prejudice in the case. *Griffin* v. *State,* 18 *Ga. App.* 462 (89 S. E. 537); *Atlanta &c. Ry.* v. *McManus,* supra; *Floyd* v. *Wallace,* 31 *Ga.* 688; *Mitchell* v. *State,* 71 *Ga.* 128 (6), 157. Where the plaintiff in error assigns error upon

the refusal of the court to allow a question upon cross-examination, it is not required of him to state what answer was expected of the witness. *Macon Union Co-op. Asso.* v. *Chance,* 31 *Ga. App.* 636 (122 S. E. 66).

A witness may be examined and cross-examined on the taking of depositions or interrogatories in the same manner as in open court. Civil Code (1910), § 5907. The order and scope of the examination of witnesses by depositions shall be in conformity with the rules of the superior court governing the examination of witnesses in trials at law. Civil Code (1910), § 5914. The answer to a question propounded on the taking of interrogatories or depositions should be full and complete and meet every material thing in the question propounded. *McNeill* v. *Rousseau,* 20 *Ga.* 593.

It was wrong for the witness in this case, on being examined by depositions, to refuse to answer questions propounded to him, unless by answering the same the witness would have incriminated himself. Civil Code (1910), § 5895; *Southern Railway News Co.* v. *Russell,* 91 *Ga.* 808 (18 S. E. 40). It is a contempt of court for a witness to refuse to answer a legal and pertinent question which would be admissable upon the trial of the case in court. Civil Code (1910), § 5910; *Fenn* v. *Georgia Ry. & El. Co.,* 122 *Ga.* 280 (50 S. E. 103); *Smith* v. *Ferrario,* 105 *Ga.* 51 (31 S. E. 38). Where answers to questions propounded to a witness upon cross-examination in depositions or interrogatories are not properly made, the court, upon proper exception thereto by the opposite party, should reject or suppress the same. Civil Code, § 5904; *Williams* v. *Turner,* 7 *Ga.* 348, 350; *Rogers* v. *Truett,* 73 *Ga.* 386; *Roberts* v. *Crowley,* 81 *Ga.* 429, 439 (7 S. E. 740). However, an exception to the admission of depositions taken by commission, because of the refusal of the witness to answer certain questions propounded to him upon cross-examination, is an exception "to the execution and return of the commission," and it "must be made in writing, and notice thereof given to the opposite party before the case is submitted to the jury; provided, the same has been in the clerk's office for twenty-four hours prior to the trial." Civil Code (1910), § 5904; *Pool* v. *Perdue,* 44 *Ga.* 454, 458; *Schaefer* v. *Georgia Railroad,* 66 *Ga.* 39, 42. Cross questions must be answered, and if not answered, the execution of the depositions is defective. *Thomas* v. *Kinsey,* 8 *Ga.* 421. The object of giving the

notice is that the other party may have the case continued and the interrogatories re-executed if he deems them material. *Thrasher* v. *Gazan,* 71 *Ga.* 632 (2 b). Where a party fails to comply with the requirements of section 5904, he can not complain that the trial court declined to suppress depositions because of the want of proper execution. *Galceran* v. *Noble,* 66 *Ga.* 367; *Langford* v. *Driver,* 70 *Ga.* 588.

It appears from the bill of exceptions and record in this case that the plaintiff gave to the defendant notice of his intention to except to the interrogatories or depositions of Tillman, before the trial of the case began. In these circumstances, the defendant had opportunity to ask that the case be continued in order that the depositions of this witness be sent back to the commissioner before whom the same was taken in order that the witness might be made to properly answer the pertinent questions propounded to him by plaintiff's counsel. It has been seen that the failure to answer the questions propounded the witness on cross-examination deprived the plaintiff of his right of cross-examination of the witness, and that the same was a material error, and it is the opinion of this court that the exceptions of the plaintiff should have been sustained and the depositions of this witness suppressed. The plaintiff sufficiently complied with the statute when he excepted to the depositions before the trial of the case began, in sufficient time to give the defendant time to ask for a continuance of the case in order to get the depositions corrected, and the contention of the defendant that the plaintiff knew of the failure of the witness to properly answer the questions at the time the depositions were sent back for a correction in the certificate of the commissioner, but did not file his exceptions thereto until just prior to the beginning of the trial, and was therefore too late, is not well founded and can not be sustained. It would therefore seem that where the questions propounded by the plaintiff on cross-examination have not been answered by the witness, and the notice of exceptions as provided in section 5904 of the code has been given the opposite party, and such party does not move to continue the case, but proceeds to trial, and the plaintiff assigns error upon the refusal of the court to sustain his exceptions and suppress the depositions of the witness, the refusal of the court to sustain the same and suppress the depositions is error, but not reversible in this case, which is.

here on a direct bill of exceptions, without a brief of the evidence, and it does not appear but that there was other evidence before the jury, unobjected to, covering the same matters as testified to by the witness Tillman on direct examination.

■ Plaintiff objected to the introduction in evidence by the defendant of the depositions of certain witnesses upon the ground that the testimony therein contained was irrelevant, incompetent, and inadmissible, in that the nature thereof was in justification of the alleged libel and slander charged by the plaintiff to have been committed by the defendant, and that at the time said testimony of these witnesses was taken the defendant had not filed any plea of justification, and that therefore the testimony of these witnesses so taken and incorporated in these depositions was, at the time it was so taken, incompetent and irrelevant to any issue in the case. The court overruled the objections of the plaintiff and allowed the evidence to go to the jury. In the bill of exceptions error is assigned upon this ruling. It is not shown in the bill of exceptions that the evidence contained in these depositions was the only evidence adduced upon the trial by the defendant to the effect that he was justified in publishing the libel charged by the plaintiff because the same was in fact true. If there was other evidence before the jury, unobjected to, tending to support defendant's plea of justification, which was later filed, the admission of these depositions in support thereof would not necessarily be a reversible error. Of course, if there was but slight evidence, or doubtful evidence, or evidence that was not clear and convincing, before the jury upon the issue of justification, the introduction of the depositions of these witnesses to the effect that the defendant was speaking and publishing the truth concerning the plaintiff would not be harmless. However, there is no brief of the evidence before this court, and it does not appear from the bill of exceptions but that there was such other evidence, clear and convincing, upon which the jury could well have planted their verdict, and, in these circumstances, the plaintiff does not show a harmful and injurious error in the introduction of this testimony. As to the question of the depositions being inadmissible in evidence in this case, see *Realty Construction Co.* v. *Freeman,* 174 *Ga.* 657, 659 (163 S. E. 732). On the question of the admission of such depositions in evidence constituting a harmless error, see *Matthews* v. *Richards,*

19 *Ga. App.* 489 (2) (91 S. E. 914); *Smith* v. *State*, 23 *Ga. App.* 76 (97 S. E. 454); *L. & N. R. Co.* v. *Lovelace*, 26 *Ga. App.* 286 (106 S. E. 6); *General Tire & Rubber Co.* v. *Brown Tire Co.*, 46 *Ga. App.* 548 (168 S. E. 75).

■ The plaintiff contends that the court erred in allowing the defendant to have the opening and concluding argument before the jury. The case is in this court upon direct bill of exceptions, and in this regard the bill of exceptions merely recites that "during the trial of the case, the court, over objection" of the plaintiff, allowed the defendant the opening and concluding argument. The bill of exceptions does not show at what stage of the trial this occurred. It is incumbent upon the plaintiff to affirmatively show in his bill of exceptions that the court erred in this respect. "Where the defendant assumed without objection the burden of proof, it was not error to allow him to open and conclude the argument before the jury. Even had the right to open and conclude been originally with the plaintiff, he waived it by acquiescing in the assumption by the defendant of the affirmative on the proof." *Willingham* v. *M. & B. Ry. Co.*, 113 *Ga.* 374 (38 S. E. 843); *Abel* v. *Jarrett*, 100 *Ga.* 732, 737 (28 S. E. 453); *Northington* v. *Granade*, 118 *Ga.* 584 (2) (45 S. E. 447); *Jones* v. *Fourth National Bank*, 20 *Ga. App.* 219 (92 S. E. 964). This being true, if the defendant had assumed the burden, it was not error for the court to rule as he did in this case. The plaintiff does not show in his bill of exceptions, as it was incumbent upon him to show, that the court erred in this respect.

■ The defendant in his cross-action alleged that the plaintiff had published certain defamatory statements concerning him in the newspapers, over the radio, by means of handbills and through the use of slides in motion-picture theaters, in which he charged that the defendant's reputation as a "frame-up artist" was well known to the people of Fulton County, and that he "framed" Jack Lance for the murder of Bert Donaldson. In his answer the plaintiff alleged that the statements published concerning the defendant, among which was the statement above referred to, were privileged, in that "said statements were made with the bona fide intent on the part of the plaintiff to protect his own interest in a matter where it was concerned, and . . said statements constituted comments upon the acts of the defendant as a public man, in his public

capacity as solicitor-general of the Atlanta Judicial Circuit of the State of Georgia, and with reference thereto; that as such public officer defendant's official conduct is open to public criticism, and that plaintiff made such comments upon the defendant's official conduct in good faith and without malice, because, as plaintiff will show, the official conduct of the defendant, known to the plaintiff, together with information obtained by the plaintiff from the public records and newspapers published in Fulton county, and from other reliable sources, prior to the making of such comments, led the plaintiff to believe, and plaintiff did believe, that the criticisms so made by plaintiff of and concerning the defendant's official conduct were fair, just, and proper, and in the public interest." No demurrer to this portion of the answer of the plaintiff to defendant's cross-action was interposed by the defendant. On the trial plaintiff offered to testify as follows: "Prior to the time that I made the charges that John A. Boykin's reputation as a frame-up artist was well known to the people of this county, and that he 'framed' Jack Lance for the murder of Bert Donaldson, as stated in the answer to the cross-bill and attached exhibits, I had read certain newspaper articles printed in the Atlanta Journal, a daily newspaper published in the City of Atlanta and circulated generally in this county, and I had inspected certain official public records of Fulton county, and the information I obtained by the reading of these newspaper articles and the inspection of the official public records of Fulton county, together with other information which I obtained from reliable sources, led me to believe and I did believe that John A. Boykin's reputation as a frame-up artist was well known to the people of this county and that he 'framed' Jack Lance for the murder of Bert Donaldson." In this connection the plaintiff offered to introduce in evidence the original newspaper articles read by him, and upon objection of the defendant that the articles and plaintiff's proffered testimony were irrelevant and immaterial to the issues in the case, the court excluded the same from the jury, and to this ruling of the court the plaintiff excepts in the bill of exceptions in this case on the ground that having filed a plea of privilege to defendant's cross-action, the excluded newspaper articles were relevant to throw light upon the character of the occasion and to show where the plaintiff obtained the information and that it was in his possession at the time he made the

statements concerning the defendant, and were admissible generally in support of the allegations in his plea of privilege; and that such action by the court prevented the jury from considering these newspaper articles, which referred to a long series of transactions in which the defendant figured, and entered into and affected plaintiff's bona fide belief in the truth of the statements published by him of and concerning the defendant.

"The following are deemed privileged communications: 1. Statements made bona fide in the performance of a public duty. 2. Similar statements in the performance of a private duty, either legal or moral. 3. Statements made with the bona fide intent, on the part of the speaker, to protect his own interest in a matter where it is concerned. 4. Fair and honest reports of the proceedings of legislative or judicial bodies. 5. Comments of counsel, fairly made, on the circumstances of his case, and the conduct of parties in connection therewith. 6. Comments upon the acts of public men, in their public capacity, and with reference thereto." Civil Code (1910), § 4436. Plaintiff alleges in his answer to the cross-action of the defendant that the statements published by him concerning the defendant were privileged. He sets up that said statements were made with the bona fide intent on the part of the plaintiff to protect his own interest in a matter where it was concerned, and because said statements constituted comments upon the acts of the defendant as a public man and in his public capacity. In other words plaintiff avers that the statements were privileged under sub-paragraphs 3 and 6 of the above section of the code. It appears from the record that the statements were made by the plaintiff in a heated political race in which he was a candidate for the office of solicitor-general of the Atlanta Judicial Circuit, held by the defendant, and for which the defendant was a candidate to succeed himself. Therefore, said statements, plaintiff alleges, were made bona fide to protect his own interest in a matter where it was concerned. "To make the defense of privilege complete in an action of libel, good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only, must appear. . . All of these questions are, however, questions of fact for the jury to determine, according to the circumstances of each case, under appropriate instructions from the court." *Sheftall* v. *Central of Ga.*

*Ry. Co.,* 123 *Ga.* 589, 592 (51 S. E. 646). The question whether the person claiming privilege, under this sub-paragraph of the code section, acted with a bona fide intent is a question of fact to be submitted to and determined by a jury. *Holmes* v. *Clisby,* 118 *Ga.* 820, 825 (45 S. E. 684). As to the defense under sub-paragraph 6 of said code section, where the statements are alleged to have been a comment upon the acts, in his public capacity, of a man holding a public office, see *Williams* v. *McIntosh,* 33 *Ga. App.* 105, 108 (125 S. E. 864), s. c. *McIntosh* v. *Williams,* 160 *Ga.* 461 (128 S. E. 672). Where a statement is pleaded as privileged, all facts calculated to throw light upon the true character of the occasion are admissible. *Jones* v. *Forehand,* 89 *Ga.* 520 (2) (16 S. E. 262). If the statement or charge made by the plaintiff concerning the defendant was made in good faith and without malice by the plaintiff to protect his interest as a taxpayer, then the defendant could not recover on his cross-bill. *Pearce* v. *Brower,* 72 *Ga.* 243; *Augusta Evening News* v. *Radford,* 91 *Ga.* 494 (17 S. E. 612, 20 L. R. A. 533, 44 Am. St. R. 53). The question of privilege is one which must be raised by plea and submitted to a jury as an issue of fact. *Flanders* v. *Daley,* 120 *Ga.* 885 (48 S. E. 327). Whether the plaintiff acted in good faith and with a bona fide intent, or published the statements concerning the defendant wilfully and maliciously, and whether or not there was probable cause for the belief on the part of the plaintiff that the source of information received by him was reliable and trustworthy, were all questions of fact which a jury alone could pass upon. "Whether the facts were sufficient to justify, mitigate, or to render privileged, either absolutely or conditionally, the publication" of the statements which the defendant contended were libelous, were questions for the jury. In *McIntosh* v. *Williams,* supra, it was specifically ruled that "The facts pleaded . . to establish the privilege claimed . . need not be the same as those stated in the libel." In *Deckner-Willingham Lumber Co.* v. *Turner,* 171 *Ga.* 240, 244 (155 S. E. 1), on the question of proving the want of malice, it was ruled that "Similar acts are admissible in evidence, if committed or proposed at or about the same time, and when the same motive may reasonably be supposed to exist, with a view to establish the intent of the defendant in respect to the matters charged against him in the petition. . . . This is so in transactions of a similar nature or like character in

which the defendant had engaged previously to the one in question. . . Intent, good faith, motive, and other such matters relating to the state of a person's mind are usually not easily susceptible of direct proof. But frequently the state of mind accompanying the doing of an act is illustrated by other acts of a similar nature, done or proposed by the defendant in such a way as to indicate a general practice or course of conduct, or as to display motive, knowledge, intent, good faith, and a variety of other such things. . . Other transactions showing fraud are admissible to show intent. . ."

The defendant alleges in his cross-action that the statement published by the plaintiff was a false and malicious defamation, wilfully intended to injure him in his individual and official capacity as solicitor-general. "Whether or not there was probable cause for the belief on the part of the defendant that the information received by it was entirely reliable and trustworthy, and whether it acted in perfect good faith, or published the article wilfully and maliciously with the intent alleged, were questions of fact which the jury alone could pass upon." *Augusta Evening News* v. *Radford,* supra. Therefore, from what has been heretofore stated, it would seem that it is manifestly a question for the jury to pass upon, under appropriate instructions from the court, whether under the allegations of the pleadings and the evidence offered by the plaintiff, under which he claimed that the statements made by him of the defendant were privileged, were sufficient to show privilege, absolute or conditional, or whether such facts were sufficient to entitle the plaintiff to mitigation of damages by the absence of malice, that is whether or not the statement was published by plaintiff of defendant without malice. It is for the jury to determine the weight and the credibility of the evidence. If from these facts the jury could find that the plaintiff made the statement concerning the defendant in good faith and under such circumstances as to entitle the plaintiff either to a finding in his favor on this issue or to a mitigation of the damages, he would be entitled to have the jury consider the information and the sources thereof, on which, he alleges, he relied in making the statement concerning the defendant, to see whether or not the plaintiff acted in good or bad faith in making the same. See *Pearce* v. *Brower,* 72 *Ga.* 243, 245.

However, even though said evidence be admissible, and even though it was improper for the trial judge to have excluded the same,

it was incumbent upon the plaintiff, in assigning error upon the exclusion of this evidence in a direct bill of exceptions, to affirmatively show that the exclusion thereof harmed and prejudiced him, and worked substantial injury to his case by depriving him of the evidence necessary to sustain his plea of privilege, or to mitigate the damages, and therefore deprived him of his defense to defendant's cross-action, on which the verdict in this case was based. If the trial judge's action in excluding the evidence had the effect of depriving the plaintiff of a substantial right, that is of his defense to the cross-action, or his right to have the damages mitigated, the same would necessarily be such an error as entered into and affected the verdict. Plaintiff does not show but what there was other evidence upon this same issue before the jury. In fact, it appears from plaintiff's plea on this issue and from his evidence that he obtained information not only from the newspaper articles and public records, but also from "other information which I obtained from reliable sources." So it does not affirmatively appear from the bill of exceptions but that the plaintiff was allowed to introduce other evidence along this line in support of his plea of privilege. There was no brief of the evidence adduced upon the trial sent to this court with the bill of exceptions in this case. We are of the opinion, therefore, that under the principles laid down from the foregoing authorities this evidence was admissible, but that the plaintiff does not affirmatively show in this case that the exclusion thereof by the trial court was such an error as this court will consider reversible upon a direct bill of exceptions.

What is ruled above as to the newspaper articles, necessarily applies to the exclusion by the trial judge of the two original indictments against Harry C. Page, the indictment against Fred Moyne, certain entries on the original jail docket kept by the sheriff of Fulton county, the original accusation and sentence in the case against J. R. Ward, and the photostatic copy of the letter from the defendant to Ed. O. Ellis, which were offered by the plaintiff as tending to support his plea of privilege, and which were rejected by the trial judge upon the same ground that the newspaper articles were rejected.

■ Plaintiff in error requested the trial judge, in writing, before he began to charge the jury in this case, to instruct them on the definition of the offense of bribery, as set forth in our Penal Code,

to wit "Bribery is the giving or receiving any undue reward to influence the behavior of the person receiving such reward in the discharge of his duty in any office of government or of justice." Penal Code, § 270. In order to pass upon and determine whether a requested instruction to the jury is pertinent and should have been given, it is usually necessary to refer to the evidence adduced upon the trial. *Wood* v. *Owen,* 133 *Ga.* 752 (2) (66 S. E. 951); *S. A.-L. Ry.* v. *Gnann,* 142 *Ga.* 381 (82 S. E. 1066). In this case, however, which is here on direct writ of error, and where error is assigned upon the refusal of the court to give the above principle in charge to the jury, it is recited in the bill of exceptions that the requested charge was "pertinent to the evidence, . . in that both plaintiff in error and the defendant had charged each other with guilt of the crime of bribery, and the issues in said case were the guilt of the plaintiff and the defendant of the crime of bribery," and the certificate of the trial judge to the bill of exceptions recites that the same was true and contained and specified all of the record necessary to a clear understanding of the errors complained of. It is true that knowledge, in a general sense, of what constitutes bribery is possessed by most of our citizens, and that practically all people now serving as trial jurors understand, when a person is charged with being guilty of bribery, generally what is meant by the charge. It would therefore not have been error, in any sense, for the court to have failed to instruct the jury as to the definition of bribery, without a timely written request therefor. However, it is the duty of the trial court to give to the jury pertinent, correct, and applicable requested instructions where they are timely made in writing, and the principles embodied in such requests are not sufficiently covered by the general instructions of the court. *McCrea* v. *Georgia Power Co.,* 46 *Ga. App.* 276 (167 S. E. 540); *Perdue* v. *State,* 17 *Ga. App.* 299 (86 S. E. 661). The charge of the court in this case is not before this court, and the bill of exceptions does not recite that the principle embodied in the requested instruction in this case was not substantially covered by the trial judge in his general instructions in the case. In these circumstances, this assignment of error does not sufficiently show that the plaintiff has been harmed by the failure of the court to charge as requested.

On December 18, 1933, two days before counsel began their

arguments to the jury in said case, plaintiff presented to the clerk of the trial court, who in turn delivered the same to the trial judge, a paper entitled in the cause, which read in part as follows: "Now comes the plaintiff above named, and before the court begins its charge, and before the arguments of counsel begin, makes and files this his request that the court give its charge in writing to the jury." Then followed in a separate paragraph the request of the plaintiff that the court give in charge to the jury the following separate pertinent requests to charge. Then followed 11 requests to charge. The court made an entry of receipt thereon, dated December 18, 1933, by initialing the same "H. M. D." By direction of the court the following was added to the bill of exceptions in connection with this assignment of error: "Upon examining the paper the judge saw that it was separate requests to charge. He thereupon studied the separate requests and made the notations on them shown on the paper. He did not read the first paragraph, presuming that the portion of the paper there set out was a mere statement of the case. The first time the judge actually knew that there was anything in the paper about a written charge was when his secretary stated to the judge that counsel for the plaintiff had stated that such a request had been made. This was after the jury had been charged and had retired, but before a verdict had been rendered. The judge sent for plaintiff's counsel and stated to him that he was not aware of any such request being made. The plaintiff's counsel stated that it had been made. This paper . . was then referred to and the judge's attention called to the first paragraph. The judge thereupon said he had not seen this statement before. Plaintiff's counsel stated that it was not a trick, but was made bona fide. Plaintiff's counsel further stated that it would not amount to anything, as they were not going up on a motion for a new trial, but plaintiff's counsel added that plaintiff was not waiving anything. At the time this statement was made by plaintiff's counsel the judge, if he had construed the request as amounting to a request that he write out his charge and read it to the jury, and file it with the clerk, could have brought the jury in if he had not understood that the request would not be insisted upon, and could have withdrawn the charge as given verbally and as taken down by the official reporter, and could have instructed the jury to disregard the same, and could have written out his charge and read it to the jury. . . Plain-

tiff's counsel did not himself hand the paper to the judge and did not at any time before the charge was delivered call the judge's attention to there having been made to the court a request for a written charge, though counsel did ask the court if the court had received plaintiff's requests. After the conclusion of all the arguments and just before the charge was commenced and after the jury was reconvened for the sole purpose of hearing the charge, plaintiff's counsel arose and verbally and in writing [which written request is appended to the bill of exceptions in this case and properly identified by the trial judge] requested the court to instruct the jury relative to a certain section of the Florida law, which he read to the court in the presence of the jury. At this time plaintiff's counsel did not suggest the necessity for putting the charge so requested in writing, nor did plaintiff's counsel suggest that there had been any issue along this line. At the conclusion of the charge as given by the court, the question arose of permitting the jury to render a verdict in the absence of the court. The plaintiff's counsel expressed his willingness for a verdict to be received in the absence of the court. The defendant's counsel was unwilling for this to be done unless the jury were furnished written forms which they could follow as models in rendering whatever verdict they might determine to render. Thereupon certain forms covering the different possible verdicts in this case were prepared and agreed upon by counsel, and the court then had these written forms handed to the jury, and verbally instructed the jury as to the use of these forms. At the time this occurred, with the consent of counsel for both sides, no suggestion was made to the court by plaintiff's counsel that he had requested a written charge, or that anything was being done contrary to any request as to the manner of charging the jury, but, on the contrary, the plaintiff's counsel expressly agreed to what has just been stated."

Plaintiff assigns as error the failure of the court to give its charge to the jury in writing,—that is, write out its charge and read the same to the jury and file it with the clerk. Plaintiff sets up in the bill of exceptions "that the verdict of the jury was not demanded by the evidence, there being issues of fact to be decided by the jury; that neither party made a motion for a nonsuit or a directed verdict, and the court did not of its own motion nonsuit or direct a verdict for either party. To the failure of the court

to deliver its charge in writing, as requested by the plaintiff in error, . . and to the failure of the court to file a written charge with the clerk, plaintiff in error then and there excepted, now excepts, and assigns the same as error, and says that the failure of the court to give its charge in writing to the jury, in accordance with the request . . which plaintiff in error contends was a request to reduce the charge of the court to writing, and to the failure of the court to file a written charge with the clerk after same had been delivered, plaintiff in error then and there excepted and now excepts, and assigns the same as error, and the failure of the court to reduce its charge to writing and read the same to the jury, and the failure of the court to file a written charge with the clerk, being controlling, entered into and affected the further progress and final result of the case, and the court erred in receiving the verdict and . . in entering judgment based thereon."

There is now and has been since 1860 a statute of force in this State upon this subject. The Civil Code (1910), § 4847, provides that "The judges of the superior courts of this State shall, . . on the trial of all civil cases tried before them, give their charges to the jury in writing; that is to say, shall write out their charges and read the same to the jury, when the counsel for either party shall require them to do so; and it shall be error for such judge to give any other or additional charge than that so written out and read." The request in this case that the court give its charge in writing to the jury was a sufficient compliance with the above statute. As soon as the charge of the court is thus written out and read to the jury by the trial judge, he shall file the same with the clerk of the court. Civil Code (1910), § 4848. All rules and modes of procedure, pleading, and practice prevailing in the trial of cases in the superior courts of this State shall apply to and be applicable in the trial of suits in the city court of Atlanta. Ga. L. 1871-2, pp. 56, 58, 63. At the outset counsel for the defendant state that it was not error for the court to fail to give his charge to the jury in writing in this case, because counsel for the plaintiff did not inform counsel for the defendant that he was going to request the court to give the charge to the jury in writing and did not submit such request to counsel for the defendant. We do not think that this contention is well founded. See Civil Code (1910), § 6084. The law as to the giving of a charge in writing by the court,

when properly requested by counsel for either side, is mandatory in its terms, and the court can not refuse to do so when requested. Courts have recognized oral requests to write out the charge as being sufficient. It could have availed counsel for the defendant nothing for counsel for the plaintiff to have submitted this paper to them; they could not have seriously objected to the court's writing the charge and reading it to the jury, it being the mandatory duty of the court to comply with the above statute when properly requested by counsel for the plaintiff.

Did the fact that the court did not read the paper handed to him by the plaintiff's counsel excuse the failure of the court to write out his charge in this case? We do not think so. The judge supposed that he was being handed specific requests to charge isolated principles of law on behalf of the plaintiff, as provided by section 6084 of the Code. It would be a safer policy for every trial judge, upon being given written requests to charge, to closely peruse the same and determine if they are applicable pertinent principles of law. It is often that failure to give in charge to the jury a principle of law will not require the grant of a new trial; yet, where the same principle is embodied in a written request to charge, duly and timely presented to the court, it would be a reversible error to refuse to give the same in charge to the jury. The object of section 4847 of the Code is to prevent misunderstanding between the trial court and counsel as to what was the charge; and the only way to prevent such disputes from arising is to require the trial judge to conform strictly to this statute. See *Fry* v. *Shehee,* 55 *Ga.* 214. Chief Justice Bleckley, in writing the opinion of the court in *Wheatley* v. *West,* 61 *Ga.* 401, 408, said "These sections of the Code stand as a kind of constitutional law between bench and bar. They entitled the counsel to have the written word, instead of oral tradition. They provide for preserving and handing down the word as a sure and enduring memorial of what was actually delivered. There is to be no controversy over the text of the charge; no uncertainty as to what revelation fell from the bench into the jury box. The judge is not to speak, but to read; and when his manuscript is exhausted he is to become silent. It would seem that if counsel can not depend upon the guaranty afforded them by these sections of the Code, they can depend upon no promise made to them in the law. If they can not get a written charge, what can they get?

What are they to trust in the whole compass of the statutes, if they are to be disappointed when they cite such peremptory language as that found in these two sections?" As following this ruling, see *Homer* v. *State, 6 Ga. App.* 667 (65 S. E. 701). "The defendant below having requested the presiding judge on the final trial to give his charge to the jury in writing, it was error not to write out and read to the jury whatever instructions the court had to give them." *Harris* v. *McArthur, 90 Ga.* 216 (15 S. E. 758). This decision was overruled by the Supreme Court in so far as it held that it was error in a case where the evidence demanded the verdict for the plaintiff to orally direct such a verdict, where the court had been requested to give its charge in writing. *Geer* v. *Dancer,* 148 *Ga.* 465 (97 S. E. 406). "When the court has been duly requested to give its entire charge in writing, and the jury, after deliberating for a while on the case, ask for additional instructions, which the court undertakes to give, these instructions must also be reduced to writing and read to the jury." *Bowden* v. *Achor,* 95 *Ga.* 243 (13) (22 S. E. 254) ; *Mauldin* v. *Gainey, 15 Ga. App.* 353 (3) (83 S. E. 276). The failure of the court to give the additional instructions in writing is a reversible error. *Bowden* v. *Achor,* supra. "An oral request that the charge of the court as a whole be reduced to writing and read to the jury is sufficient to invoke the statutory requirement which inhibits a trial judge from giving to the jury any other or additional charge than that so written and read." *Citizens Bank* v. *Fort, 15 Ga. App.* 427 (2) (83 S. E. 678). The trial judge erred in failing to reduce his charge to writing and read the same to the jury, when so requested, which error ordinarily requires the grant of a new trial. *Jones* v. *State, 65 Ga.* 506; *Burns* v. *State, 89 Ga.* 527 (15 S. E. 748) ; *Central of Ga. Ry. Co.* v. *Perkerson, 115 Ga.* 547. Under section 4847 of the Code, where the judge is requested to put his charge in writing, he violates the statute, and a new trial must be granted, if he gives to the jury any instruction, not in writing, as to how they shall consider the case to be submitted to them, or how they shall make a verdict. *Walker* v. *State, 10 Ga. App.* 85 (72 S. E. 531). The requirement of the Code, that the judge shall, when requested by counsel for either party, write out his charge and read it to the jury, is mandatory, and when such a request is made it is error to give a charge in any other manner. *Brindle* v. *State, 17 Ga. App.* 741 (88 S. E. 460).

The judge can not deprive the party of this right on the ground that he has not time to comply with the request. "We sympathize, of course, with the judges when unusual and unreasonable requests are made of them by counsel; and we appreciate that it would add to their labors if they had to write out every charge delivered in each case tried by them; but the law is the law, and when counsel invoke it, all must obey it." *Homer* v. *State,* supra. It was there said that "any decision, sentence or decree of the court" was broad enough to include a refusal to deliver a written charge; and that the court, having refused to write out the charge as requested, erred, and "a new trial is mandatory." The failure to write out the charge, when timely requested so to do by counsel, is a reversible error, unless the evidence demanded the verdict as rendered. *Forrester* v. *Cocke,* 6 *Ga. App.* 829 (65 S. E. 1063) ; *Walker* v. *State,* 8 *Ga. App.* 214 (68 S. E. 873) ; *Ashley-Price Lumber Co.* v. *Henry,* 23 *Ga. App.* 93 (98 S. E. 185). The trial judge has no discretion. He must write out his charge and read it to the jury. *Wheatley* v. *West,* supra; *Bank* v. *Kent,* 57 *Ga.* 285; *Fields* v. *Carlton,* 75 *Ga.* 556; *Campbell* v. *Miller,* 38 *Ga.* 304; *Gray* v. *Obear,* 54 *Ga.* 231; *Fry* v. *Shehee,* supra. As was held in *Wheatley* v. *West,* supra, "The complaint is that the whole oral charge was illegal because the case was one for a written charge and no other. What objection to a charge is more fatal than that every syllable of it was delivered contrary to law."

It therefore follows that the court erred in not writing out his charge and reading the same to the jury in this case. The bill of exceptions reciting that the "verdict of the jury was not demanded by the evidence, there being issues of fact to be decided by the jury," and the certificate of the trial judge certifying that the bill of exceptions is true and correct and contains or specifies all of the record necessary to a clear understanding of the errors complained of, we think that the error of the court in failing to write out his charge and read it to the jury, when requested by counsel for the plaintiff before the arguments began, was such error as to require the grant of a new trial in a case brought to this court upon direct exceptions to such ruling as being controlling and as affecting the final verdict in the case, no motion for new trial being made in the court below.

It is no excuse for the failure of the trial judge to write out his charge to the jury that the official court reporter took down the

charge as uttered, and that this constituted a sufficient compliance with the purpose and intent of the statute, that purpose and intent being "to preserve a true memorandum of what was actually charged." *Wheatley* v. *West,* supra. As to this point the Supreme Court in *Wheatley* v. *West* held that "As to substituting stenographic reporting in place of first writing, and then reading the charge as written, that is for the General Assembly, and not for the judiciary." In *Bowden* v. *Achor,* supra, it was held that "The law providing for the appointment of official court reporters may offer good reason for a repeal of section 244 of the Code (now section 4847); but as matter of fact that section has never yet been repealed by the legislature." In *Brindle* v. *State,* supra, it was said that the provisions of the statute "are not complied with by directing the official stenographer of the court to take down, in the course of the trial and as delivered to the jury, the oral utterances of the judge in his charge. Of course the judge may, for his own convenience, dictate to the stenographer what he intends to read to the jury, and have it transcribed, so that he can read it, but the charge must be reduced to a legible condition and placed in a form in which it can be 'known and read of all men,' before the judge delivers it by *reading* it to the jury. In most cases the instructions of the trial judge as orally delivered are stenographically reported and thereafter transcribed, as there may be occasion for a review of the charge. However, in order to show that this ordinary mode of procedure would not be a compliance with the provisions" of the statutes on this subject, "it is only necessary to point out that where the charge is merely taken down stenographically during its delivery, it would be impossible for the judge, as required by law, to immediately hand a copy of his charge in writing to the clerk to be filed as a part of the record. Furthermore, to permit a stenographer, after the mere oral delivery of a charge, to reduce to writing, according to his measure of ability as a stenographer, what the judge may have orally stated to the jury would not prevent 'controversy over the text of the charge;' which, as pointed out by Judge Bleckley in *Wheatley* v. *West,* 61 *Ga.* 408, is one of the important purposes to be subserved by the statute."

We come now to consider whether counsel for the plaintiff waived his right to have the judge write out his charge and read the same to the jury. It is cogently insisted by the defendant that this is

the true interpretation to be placed upon the conduct of counsel for the plaintiff. As has been shown hereinbefore, after the jury had been charged and were deliberating on their verdict, the trial judge first found out that counsel for the plaintiff had filed a written request to him to write out his charge. He then sent for plaintiff's counsel and informed him that he did not know of the request and had not seen the request before. Plaintiff's counsel stated that it would not amount to anything, as they were not going up on a motion for a new trial, "but plaintiff's counsel added that plaintiff was not waiving anything." At this time the trial judge, if he had construed the request as amounting to a request that he write out his charge, read it to the jury and file it with the clerk, could have brought the jury in "if he had not understood that the request would not be insisted upon, and could have withdrawn the charge as given verbally and as taken down by the official reporter, and could have instructed the jury to disregard the same, and could have written out his charge and read it to the jury." The bill of exceptions here recites, by direction of the trial judge, that "As a matter of fact, practically the entire charge as given, and all of it except the more or less formal parts had been written out by the judge and read to the jury, and this writing is available. It would have been very easy for the judge to have completed and read the entire charge to the jury and filed it with the clerk; and counsel for plaintiff in error could have made a motion for new trial. Plaintiff's counsel did not himself hand the paper to the judge and did not at any time before the charge was delivered call the judge's attention to there having been made to the court a request for a written charge, though counsel did in the progress of the case ask the court if the court had received plaintiff's requests." At the conclusion of the charge the court verbally instructed the jury as to the use of certain forms for their verdict, which forms had been agreed upon by counsel. "At the time this occurred . . no suggestion was made to the court by plaintiff's counsel that he had requested a written charge, or that anything was being done contrary to any requests as to the manner of charging the jury."

In the case of *Wheatley* v. *West,* supra, the trial judge certified that at the opening of the case counsel for the defendant requested the court to write out his charge to the jury and read the same, but that the charge was not so written out and read to the jury because

the court was of the impression that counsel for the defendant had afterwards agreed that the stenographer should take the charge down as delivered, and that said charge was taken down verbatim by the stenographer. In that case the Supreme Court held "The Code entitles the counsel of either party, on the final trial of a civil case, to request that the charge of the court to the jury be delivered in writing, and to have it so delivered. In this case the request was made, and the court failed to comply with it, being under the impression that the request was waived. What produced this impression is not stated, and it seems that, though the request itself was an absolute certainty, the supposed waiver of it was altogether uncertain. A doubtful waiver can not defeat a right which has become vested to the exclusion of all doubt. The request came in due time, and was express. Unless it was expressly waived or withdrawn, the court should have complied with it. Not to comply was the denial of a clear statutory right; how clear, can be seen by a mere glance at" the statute,—sections 4847 and 4848 of the Civil Code of 1910. As shown hereinbefore in this opinion, the court held in that case that the error of the court in failing to write out his charge and read it to the jury was fatal, and required the grant of a new trial to the defendant therein. So far as we have been able to ascertain this decision of the Supreme Court has never been questioned or doubted, but, on the contrary, has been followed by that court and by this court in many subsequent decisions. We can not justly hold that the above-described conduct on the part of plaintiff's counsel amounted to an "express waiver" or withdrawal of the timely given request for the court to write out his charge and read the same to the jury.

It appears from the bill of exceptions that just before the charge was commenced the plaintiff's counsel "arose and verbally and in writing requested the court to instruct the jury relative to a certain section of the Florida law, which he read to the court in the presence of the jury. At this time, plaintiff's counsel did not suggest the necessity for putting the charge so requested in writing, nor did plaintiff's counsel suggest that there had been any request along this line." It further appears that at the conclusion of the charge there arose a question as to permitting the jury to return their verdict in the absence of the court, that counsel for the plaintiff agreed for this to be done, but that counsel for the defendant was

unwilling for it to be done unless the jury were furnished certain forms which they could follow, that counsel for both parties agreed upon the forms of verdict, that the court then verbally instructed the jury as to the use of these forms, and that the plaintiff did not at the time suggest to the court that he had requested that the charge to the jury be written and read to the jury. We do not think that this amounted to an express waiver of the written request for a charge in writing, which was presented to the court before the arguments began. Where counsel for either party, who has duly requested the court for a written charge, orally requests the court to deliver a certain additional instruction, and the court thereupon orally instructs the jury along the line requested, this does not constitute a waiver on the part of such party of his right to have the general charge of the court written out and read to the jury, but it does constitute a waiver on the part of such party of his right to have such oral request written out, and it is not error for the court to orally charge the jury along the line suggested by such oral request. See *Continental National Bank* v. *Folsom, 67 Ga.* 624. In none of the following cases was it held that where a party has requested that the court put its entire charge in writing and read it to the jury, and such party subsequently orally requests an additional instruction, and the court orally gives such requested instruction, that such action on the part of the party waived the timely request given to the court that the charge be put in writing and read to the jury. *Hicks* v. *State, 105 Ga.* 627 (31 S. E. 579); *Fletcher* v. *State, 43 Ga. App.* 405 (159 S. E. 126); *Parlee* v. *State, 19 Ga. App.* 752 (92 S. E. 306); *Griggs* v. *State, 17 Ga. App.* 301 (86 S. E. 726). In these cases the defendant requested a particular instruction of the court, which was erroneous, but which the court gave in charge to the jury. In these circumstances, it was properly held that the defendant could not complain of the action of the court in giving such requested instruction to the jury, the error being brought about by the defendant's action. There is nothing in the case of *Galceran* v. *Noble, 66 Ga.* 367 (4), to the contrary of the ruling in this case. In that case it was held that the fact "that the court added to his written charge, by request of plaintiff's counsel, is no ground for exception by him." There the court did not hold that it was not error for the court to fail to give the main and general charge in writing, as requested by the plaintiff,

but held that it was not error for the court to give the additional charge orally, because the defendant had requested such instruction. In other words, the giving of the additional instruction orally was error, but it was error at the plaintiff's own invitation.

The cases of *Theis* v. *State,* 45 *Ga. App.* 364 (2) (164 S. E. 456); *Caswell* v. *State,* 27 *Ga. App.* 78 (2) (107 S. E. 562); *Harris* v. *State,* 11 *Ga. App.* 137 (74 S. E. 895); *Thompson* v. *State,* 20 *Ga. App.* 177 (7) (92 S. E. 959), and *Cumming* v. *State,* 155 *Ga.* 346 (2) (117 S. E. 378), are not authority for holding that the plaintiff in this case had expressly waived or withdrawn his timely written request that the court write out the charge and read the same to the jury, by reason of his acts or silence, and because he did not expressly ascertain whether the court had read his request to write out his charge. The plaintiff in this case had made his request for the court to write out the charge as required by the statute. While the court was charging the jury the plaintiff could not very well know but that the court had written out his charge and was reading it to the jury, the bill of exceptions showing that most of the charge as given, except the formal parts, was actually written out and read to the jury. However, even if it could be held that the court had sufficiently complied with section 4847 of the Code by having most of the charge, all but the formal parts, written out and by reading the same to the jury, it does not appear that the charge was delivered to the clerk of the trial court as soon as delivered, in compliance with section 4848, which of itself constitutes reversible error. *Ashley-Price Lumber Co.* v. *Henry,* supra.

This court has read the decisions in *Schumpert* v. *State,* 9 *Ga. App.* 553 (2) (71 S. E. 879); *Trollinger* v. *State,* 38 *Ga. App.* 357 (144 S. E. 129); *Benton* v. *State,* 31 *Ga. App.* 781 (122 S. E. 97), and *Wilson* v. *State,* 176 *Ga.* 198 (167 S. E. 111), wherein silence of the accused was held to amount to a waiver of his right as to a selection of the jury, although at the outset of the trial he had declared that he waived nothing. These decisions are not authority for a contrary holding in this case, and that the plaintiff had "expressly waived" his timely written request that the court write out the charge and read the same to the jury.

In *Lane* v. *State,* 9 *Ga. App.* 294 (70 S. E. 1118), the defendant's counsel, who had previously requested that the court write out his charge and read it to the jury, before the court began the charge,

went to the bench and informed the court that he "need not trouble to write the charge out." Of course, this constituted an express waiver and a withdrawal of the previous request that the court write out the charge and read it to the jury.

The decisions in *Sizer* v. *Melton,* 129 *Ga.* 143 (58 S. E. 1055); *Roberts* v. *Atlanta Con. St. Ry. Co.,* 104 *Ga.* 805 (30 S. E. 966); *Stix* v. *Pump,* 37 *Ga.* 332, and *Shropshire* v. *Johnson,* 62 *Ga.* 359, to the effect that a party who knows of certain irregularities in the trial of a case, but says nothing concerning them, and sits back and waits to see if a verdict is returned in his favor, can not thereafter take advantage of such irregularities and object to the verdict against him, but he will be held to have waived the same by his silence and failure to object to the same at the proper time, have no application to the case at bar. Here the plaintiff complied with the statute by giving the court a timely request to give its charge to the jury in writing. After he had done this, nothing further remained for the plaintiff to do. There was nothing to put the plaintiff on notice that the court had not read the paper presented and noted the request therein embodied, which was the very first paragraph in the paper, to put his charge in writing and read the same to the jury.

Corpus Juris says: "A request for written instructions should be made in such a manner as to inform the court clearly of the desire of the party on the subject." 64 C. J. 646. The statute (code section 4847) in our State which controls this matter provides that the trial judge shall give his charge to the jury in writing, that is to say, shall write out his charge and read the same to the jury, in all civil cases, when counsel for either party shall require them to do so. It would seem that a paper entitled in the cause, containing specific requests to give in charge certain principles of law, and which contains as the first paragraph thereof a request that the charge of the court be put in writing and read to the jury, and which is presented to the court two days before arguments to the jury were begun, was a sufficient compliance with the statute. The paper was then presented to the judge, who placed his initials thereon, as receiving the same before the arguments began. The contention of counsel for the defendant, that this paragraph was so located on the page as to be easily and naturally overlooked by the trial judge or anyone who would read the paper, does not seem plausible. It

was not in an obscure place, but was the very first writing on the paper, the very first paragraph one would encounter when undertaking to read the paper presented.

*Judgment reversed. Stephens, J., concurs. Jenkins, P. J., dissents.*

STEPHENS, J., concurring specially. I concur, but do not commit myself to the proposition that the errors committed are not reversible errors.

JENKINS, P. J., dissenting. I do not fully agree with the rule of law stated in the 1st division of the syllabus and opinion. I concur in the conclusions, but not in all that is said, in the remaining divisions of the syllabus and opinion, except the 7th. I disagree with the conclusions reached in that paragraph. Irrespective of the various reasons assigned by the defendant in error as to why the failure of the judge to reduce the charge to writing would not, under the facts disclosed by the record in this case, amount to reversible error, it is my opinion that exception can not be taken to such failure on the part of the judge under a direct bill of exceptions. While it is true that the rule of procedure under section 6-804 of the Code of 1933, authorizing a direct bill of exceptions from a ruling of the court which necessarily has been controlling in the trial of the case, does not mean that the movant must show that but for the ruling he must necessarily have prevailed in the court below, this section must nevertheless be interpreted to mean that he must affirmatively show that the effect of the ruling was such as necessarily prevented him from prevailing in the case. In other words, he does not have to show that he would certainly have won the case but for the adverse ruling; but he must show that the effect of the ruling rendered it impossible for him to do so. In my opinion, the legislature by its act of 1898 embodied in this Code section, which permits direct exceptions to rulings where the "verdict necessarily has been controlled" thereby, did not intend to put direct bills of exceptions on the identical footing with ordinary bills of exceptions where a motion for new trial has been made. In ordinary bills of exceptions, unless a verdict was demanded by the evidence, any erroneous ruling or decision whereby the movant has been deprived of some substantial right requires a reversal of the judgment; whereas on a direct bill of exceptions he must not only show some material erroneous ruling or decision

of the trial court, but must go further and affirmatively show that the effect of such ruling or decision must necessarily have been fatal to his case. I therefore do not agree with all that is said by my brethren in the first division of the syllabus and opinion, and differ with them as to the conclusion drawn in the seventh division. It might be conceded that the court committed what would ordinarily amount to reversible error in failing to reduce the charge to writing upon the request of counsel; yet under the procedure adopted by the plaintiff in error, unless he went further and affirmatively showed that such illegal and erroneous failure on the part of the trial judge was injurious to the movant's rights to the extent that it was necessarily fatal to his cause, it is my opinion that the exception to such failure, in a direct bill of exceptions, would not authorize a reversal of the judgment. In other words, in order for this court to hold that the action of the trial court in not writing out its charge and reading it necessarily controlled the result, the plaintiff in error would be compelled to affirmatively show that the failure to do so necessarily precluded a verdict in his favor. This he has entirely failed to do. No effort is even made to show that the charge as actually given was in any wise erroneous, other than by showing that it was not first reduced to writing as requested.